Kevin RUTLEDGE, Plaintiff-Appellant,

v.

ARIZONA BOARD OF REGENTS, Arizona State University, Frank Kush, William Maskill, Fred L. Miller, Defendants-Appellees.

Kevin RUTLEDGE, Plaintiff-Appellant,

v.

ARIZONA BOARD OF REGENTS, Arizona State University, Frank Kush, William Maskill, Fred L. Miller, and Gary Horton, Defendants-Appellees.

Nos. 80–5005, 80–5130.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1981.

Decided Nov. 12, 1981.

Rehearings Denied Dec. 8, 1981.

Robert Ong Hing, Stockton & Hing, Phoenix, Ariz., for plaintiff-appellant.

J. Ruth Sproull, Phoenix, Ariz., argued for defendants-appellees; Michael L. Gallagher, Phoenix, Ariz., on brief.

Before GOODWIN and SNEED, Circuit Judges, and HALBERT *, District Judge.

SNEED, Circuit Judge:

Appellant's first amended complaint and action were dismissed by the district court on the grounds, first, that the action was barred by the Eleventh Amendment and, second, that the complaint did not allege a violation of appellant's civil rights. Also, costs were taxed against appellant by the district court. Appellant appealed both the dismissal and the order with respect to costs. The appeals were consolidated.

We affirm the dismissal of the complaint and action as alleged in Count Four and a portion of Counts Three and Five. We reverse and remand with respect to Counts One and Two, a portion of Count Three and that portion of Count Five that alleges a claim under the first part (that portion preceding the semicolon) of 42 U.S.C. § 1985(2). We also reverse and remand the order taxing costs against the appellant.

Our jurisdiction rests on 28 U.S.C. § 1291.

## I.

### THE FIRST AMENDED COMPLAINT

Appellant in his first amended complaint describes his success as a football player in high school and his recruitment by several colleges and universities, including Arizona State University (A.S.U.), acting through its football coach, the defendant, Frank Kush. Appellant chose to attend Arizona State University in the fall of 1977 on condition that he receive a football scholarship commencing the second semester of his first year. Appellant alleges that he performed successfully as a football player during the 1977 football season and that he obtained his athletic scholarship in the second semester of the 1977–78 academic year.

According to appellant's complaint, his troubles commenced shortly after the end of the 1977 football season when he received injuries to his face and chest as the result of an automobile accident. A chest infection resulted which impaired his ability to perform during the spring football practice and the fall training camp. Appellant was demoted from first string defensive back to the last string by the time the training camp closed, although he remained the starting punter.

Appellant signed a scholarship contract in the fall of 1978 and thereafter requested that he be permitted to sit out the 1978 season but to continue to practice with the team, a status known as "red-shirting." Appellant alleges appellee Kush consented to "red-shirt" him during the 1978 season. Appellant watched the opening game of the season from the stands, but during the following week's practice he was told by appellee Maskill that he had not been "red-shirted" and Kush called him a liar for saying that he had been. Thereafter appellant was considered by Kush as a full member of the squad. Appellant alleges that he continued to be underweight and weak as a result of the chest infection and that neither Kush nor Maskill attempted to determine the cause of his condition.

On October 28, 1978, during the University of Washington game and after what Kush thought was a poor punt, appellant alleges that Kush took appellant's helmeted head between his two hands, shook his head from side to side, yelled obscenities at him, and then struck him with a fist in the mouth. Thereafter, Kush held appellant up to public ridicule and did not permit appellant to punt in a game for the rest of the season. Kush, appellant also alleges, recruited and offered a full scholarship to a new punter.

Appellant rid himself of his infection during early 1979 and immediately his weight and strength improved. Upon reporting to spring training, however, he was told by Maskill that he should quit the team and transfer to another school. Also, he was not permitted to scrimmage or play in exhibition games. Kush and Maskill employed

* Honorable Sherrill Halbert, Senior United States District Judge for the Eastern District of California, sitting by designation.

scorn and ridicule in an attempt to get appellant to quit the team and transfer to another school, thereby forsaking his scholarship. The appellees "refused to consent to plaintiff's [appellant's] transfer, making plaintiff ineligible for financial aid [by the transferee school] for one year under NCAA rules." First Amended Complaint, ¶ 28. These rules also provide that "institutional aid may not be gradated or canceled (sic) during the period of its award on the basis of (i) a student-athlete's ability or his contribution to a team's success, (ii) because of an injury which prevents the recipient from participating in athletics or (iii) for any other athletic reason." First Amended Complaint ¶ 27. In addition, under the Constitution and By-Laws of the National Collegiate Athletic Association (NCAA) "plaintiff, once having been granted an athletic scholarship at ASU could have that scholarship revoked only for good cause, and only after a proper hearing, if so requested."

Appellant alleges he was "forced to leave A.S.U." and "transfer to the University of Nevada at Las Vegas, without a scholarship." *Id.* at ¶ 28. This required appellant to be red-shirted without a scholarship his first year at Nevada and to extend his stay in school by a semester in order to complete his football eligibility.

The complaint, after reciting the above allegations, contains five counts. Count One charges Kush with all the allegations applicable to him and asserts that Kush conspired with his assistant coaches, including Maskill, to deprive appellant of his scholarship and his rights to a hearing under NCAA rules by means of "a pattern of harassment, embarrassment, defamation, and intentional infliction of mental distress" in order to obtain the opportunity to give appellant's scholarship to another. This deprived appellant of an advantageous business and educational relationship with A.S.U. Appellant alleged actual damages in the amount of $100,000, and also requested an award of punitive damages.

Count Two was directed at Maskill. It charged him with conspiring with Kush to induce appellant to give up his scholarship and transfer to another school.

Count Three incorporates all the preceding allegations and is directed at the Board of Regents of Arizona State University and athletic director Fred L. Miller, who, it is alleged, are vicariously liable for the acts of Kush and Maskill and also are liable because of their failure to supervise Kush and Maskill adequately. A prayer for compensatory damages is included in the count.

Count Four, after incorporating all the foregoing, alleges that Kush and Maskill acted under color of state law and deprived appellant of rights, privileges, and immunities under the Constitution and thereby are in violation of 42 U.S.C. § 1983. The count contains prayers for compensatory and punitive damages, attorney's fees, costs, and interest on the judgment until paid.

Count Five, again incorporating all preceding allegations, charges Kush, Miller, and one Horton, another A.S.U. assistant football coach, of conspiring to obstruct justice by intimidating material witnesses and encouraging others to deter appellant from enforcing his legal rights. In this manner, appellant, it is alleged, was deprived of equal protection of the laws and of his privileges and immunities in violation of 42 U.S.C. § 1983 and § 1985(2).

Jurisdiction in the district court was alleged to be based on diversity of citizenship, 28 U.S.C. § 1332, the deprivation of civil rights, 28 U.S.C. § 1343, and the existence of a federal question, 28 U.S.C. § 1331. The required jurisdictional amount was properly alleged.

We shall consider initially the scope of the bar of the Eleventh Amendment as it relates to each of the counts of the complaint. Thereafter, we shall consider briefly the manner in which the appellant's claim based on Arizona law, jurisdiction with respect to which is based on diversity of citizenship, may be affected by the principles of res judicata and collateral estoppel. Finally, we shall consider the appellant's civil rights allegations.

## II.

### ELEVENTH AMENDMENT IMMUNITY

The district court held that the appellant had established diversity jurisdiction in that at the time the action was commenced appellant was a citizen of Nevada while the appellees were citizens of Arizona. We affirm that holding.

The appellees contend, however, that the Eleventh Amendment deprived the district court of jurisdiction with respect to each count of the appellant's first amended complaint. The district court agreed with this contention. We hold that the immunity of the Eleventh Amendment extends only to the Arizona Board of Regents and Arizona State University. We also hold that appellee Miller is entitled to partial immunity. Appellees Kush, Maskill, and Horton, on the other hand, are not entitled to assert to any extent the immunity of the Eleventh Amendment to deprive the district court of jurisdiction.

█ Our analysis commences with *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The latter held that an effort by a state official to enforce an alleged unconstitutional state statute could be enjoined notwithstanding the Eleventh Amendment. Under these circumstances the state official acts not on behalf of the state but as an individual. 209 U.S. at 159-60, 28 S.Ct. at 453-454. The former held that when the liability sought to be imposed must be paid from public funds in the state treasury the Eleventh Amendment is a bar to enforcement. 415 U.S. at 663, 94 S.Ct. at 1355. Thus, a suit seeking a refund of taxes paid to a state encounters the Eleventh Amendment bar even when nominally against state officials, *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), while a suit against a state official for acts wrongful under general law does not encounter this bar. *See Hopkins v. Clemson Agricultural College*, 221 U.S. 636, 642-43, 31 S.Ct. 654, 656, 55 L.Ed. 890 (1911); *New England Patriots*

*Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1201 (1st Cir. 1979).

█ Obviously the source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction. *See Edelman v. Jordan*, 415 U.S. at 668, 94 S.Ct. at 1358; *Hutchison v. Lake Oswego School District No. 7*, 519 F.2d 961, 966 (9th Cir. 1975). Other significant factors include whether the defendant entity performs an essential government function and the manner in which the entity is regarded by the law of the relevant state. *See* 519 F.2d at 966-68. Whether state law treats the entity as the state, permits it to sue and be sued, permits it to take property in its own name, or permits it to conduct itself substantially independently of the state are relevant aspects of the state law that must be considered.

█ The district court properly applied these factors in reaching the conclusion that this suit against the Arizona Board of Regents and Arizona State University was not cognizable in a federal court. The Arizona Board of Regents is treated as the State of Arizona under Arizona law. *See Arizona Board of Regents v. Arizona York Refrigeration Co.*, 115 Ariz. 338, 565 P.2d 518 (1977). Its funds are state funds. The fact that such funds may have been derived from insurance proceeds does not alter this conclusion. *Id. Markowitz v. United States*, 650 F.2d 205 (9th Cir. 1981).

In support of its holding the district court observed as follows:

Analysis of the statutory scheme governing the Board of Regents also weighs in favor of a finding of Eleventh Amendment immunity. The Board of Regents consists of eight members appointed by the governor, and the governor and the state superintendent of public instruction serve as ex officio members. Ariz.Rev. Stat.Ann. § 15-721(A) (1972). The powers and duties of the Board of Regents are regulated by the state legislature. *Id.* at § 15-725. In addition, the Board of Regents is required to submit a detailed report to the governor after the close of

each fiscal year. *Id.* at § 15–727. Under similar circumstances, other courts have concluded that a suit against the Board of Regents must be considered a suit against the state for Eleventh Amendment purposes. *Martin v. University of Louisville,* 541 F.2d 1171, 1174 (6th Cir. 1976); *Jagnandan v. Giles,* 538 F.2d 1166, 1173–76 (5th Cir. 1976). The reasoning in those cases is sound and will be followed in the present action. Thus, the action against the Board of Regents must be dismissed.

We find these observations persuasive.

The position of Arizona State University is not materially different for Eleventh Amendment purposes. Although it is contended that it is an activity carried on by the Arizona Board of Regents and thus not a jural entity, our holding would not be otherwise even if this were true. Its funds would be state funds from which the damages appellant seeks must be paid.

The position of appellees Miller, Kush, Maskill, and Horton is different, however. Count Three charged Miller with vicarious liability for the acts of Kush and Maskill. Such liability, if established, would rest solely upon his position as an official of Arizona State University. To that extent the appellant's suit is against the University and the Board of Regents, which, as we have held, is a suit against the state for Eleventh Amendment purposes. *Cf. Stone v. Arizona Highway Commission,* 93 Ariz. 384, 393–94, 381 P.2d 107, 113 (1963) (state employee not personally liable under doctrine of respondeat superior). The fact that Miller is the nominal defendant in this aspect of the plaintiff's case does not preclude the operation of the Eleventh Amendment's bar. *See Ford Motor Co. v. Department of Treasury,* 323 U.S. at 464, 65 S.Ct. at 350.

Miller, however, is also charged in Count Three with a failure to supervise Kush and Maskill adequately. This amounts to an allegation under general law of wrongful failure to act by a state official. *Cf. Stone v. Arizona Highway Commission,* 93 Ariz. at 394, 381 P.2d at 113–14 (state officials may be held liable for their own acts of misfeasance). As to such allegations the Eleventh Amendment bar is inapplicable. *See Hop-*

*kins v. Clemson Agricultural College,* 221 U.S. at 642–43, 31 S.Ct. at 656; *New England Patriots Football Club, Inc. v. University of Colorado,* 592 F.2d at 1201. Neither the district court nor Miller have pointed to any law of the State of Arizona that would require that any damages, for which Miller would be liable for his failure to supervise Kush and Maskill properly, be paid from state funds. The mere fact that his wrongs occurred in the scope of his employment, in the sense that term is generally used in agency law, does not require the conclusion that the suit in this respect is against the state. It is true, of course, that by reason of the acts of Miller, the appellant under Arizona law may have a claim in state court against the State of Arizona. *See* Ariz.Rev. Stat. § 12–821 to 826. The fact that such a claim may exist does not invoke the Eleventh Amendment's bar. Nor does Ariz.Rev. Stat. § 41–621(A)(3) have that effect. It does no more than authorize the acquisition of liability insurance on behalf of the state, its agencies, and its employees.

■ Our reasoning is equally applicable to Kush and Maskill. The district court extended the Eleventh Amendment bar to these appellees on the ground that "the alleged acts were committed in the interest of the Arizona State University football program" and that nothing suggests that "the alleged conduct falls outside the scope of Kush's or Maskill's scope of employment." This is not a sufficient ground to invoke the Amendment's bar. That bar is not automatically applicable to a suit brought against a state official in his individual capacity alleging the commission by him of a common law tort in the course of his employment. *Johnson v. Lankford,* 245 U.S. 541, 38 S.Ct. 203, 62 L.Ed. 460 (1918). Federal jurisdiction, of course, must be established, but that is no problem in this case because of the existence of diversity jurisdiction.

### III.

### COLLATERAL ESTOPPEL AND RES JUDICATA

■ It follows that the appellant's claims against Miller, Kush and Maskill are not

entirely barred by the Eleventh Amendment. Inasmuch as appellant has established jurisdiction based on diversity with respect to these defendants, it is necessary to reverse and remand to permit the appellant to proceed to trial on such claims based on Arizona law as are appropriate. These would include proceedings based on the general tort law of Arizona.

It is likely, however, that some or all of appellant's claims will be barred by the doctrines of res judicata and collateral estoppel. Proceedings in the state court have occurred with results to date adverse to appellant. Although the complete record of those proceedings is not a part of the record in this case, we have been informed that the state court eschewed consideration of the constitutional claims on the ground that the district court's order dismissing those claims was res judicata. The fact that these issues were not considered in the state court does not prevent its judgment from having res judicata effect in the federal forum. When a party seeks relief in state court for an alleged wrong, he is thereafter barred from seeking relief on constitutional grounds "from the same defendant, for the same wrong, in federal court." *Gallagher v. Frye*, 631 F.2d 127, 128–29 (9th Cir. 1980); *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1977). It is therefore clear that the state court judgment denying relief on tort theories will operate to preclude consideration of the same facts on constitutional grounds.

Since we have not been provided with the state court record, we must leave it to the district court to fix the precise extent to which res judicata and collateral estoppel will bar appellant from seeking relief in this action. We can only make clear that none of our holdings are intended to bar the proper application of collateral estoppel and res judicata on remand of this case. This includes our holdings with respect to appellant's civil rights allegations. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (application of collateral estoppel in suits based on 42 U.S.C. § 1983). We now turn to those allegations. In doing so we repeat that the claims alleged against Kush, Maskill, Miller, and Horton in Counts Four and Five are not barred by the Eleventh Amendment.

## IV.

## THE CIVIL RIGHTS ALLEGATIONS

Counts IV and V allege that Kush, Maskill, Miller, and Horton have engaged in acts under the color of state law that amounted to a deprivation of appellant's rights, privileges, or immunities secured by the Constitution within the meaning of 42 U.S.C. §§ 1983 and 1985(2). Because Counts IV and V incorporate all the allegations of the preceding counts, one must survey the entire complaint to determine precisely the actions that the appellant contends constitute such deprivations.

This turns out to be more simple than one might have anticipated. Count Two is directed at Maskill, and whether it states a claim turns entirely on whether Count One states a claim against Kush. Therefore, the analysis of Count One is equally applicable to Count Two. Count Three, on the other hand, fails to state a claim against the Arizona Board of Regents and Arizona State University because of the Eleventh Amendment. No further discussion of that portion of Count Three is necessary. Insofar as Count Three under our discussion in Part II of this opinion may state a claim against Miller not barred by the Eleventh Amendment, the validity of that claim initially turns on whether Count One states a claim against Kush. The failure of Count One to state a claim against Kush would completely exonerate Miller.

Because of these relationships between Counts One, Two, and Three, our discussion of the first of the two civil rights counts, Count Four, which alleges a claim embraced within 42 U.S.C. § 1983, can be focused entirely on the complaint's Count One.

### A. *Count Four*

A careful analysis of Count One reveals that the following actions of Kush are al-

leged to amount to deprivations actionable in federal court by reason of 42 U.S.C. § 1983:

1. Assault and battery;
2. Demotion of appellant from the position held during the 1977 season;
3. Harassment, embarrassment, and defamation;
4. Deprivation without a hearing of appellant's scholarship and his business and educational relationship with Arizona State University.

We shall consider each of these allegations. All concede that all relevant actions by the appellees were under color of state law.

### 1. Assault and Battery.

■ This court has held that an allegation of "an unprovoked assault and battery by a guard upon a prisoner known by the guard to be suffering from an attack of emphysema, by striking him in the solar plexus hard enough that the 'attack rendered the patient plaintiff totally handicapped'" states a claim under 42 U.S.C. § 1983. *Meredith v. State of Arizona*, 523 F.2d 484 (9th Cir. 1975); *see Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974). We left open the question whether less reprehensible conduct would suffice to state a claim. 523 F.2d at 484.

We need not pursue this issue, however, because we believe the teaching of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), provides the guidance we must accept. Under that decision we may assume, without deciding, that the alleged assault and battery deprived the appellant of "liberty" within the meaning of the Fourteenth Amendment and focus our attention on whether this was done "without due process of law." *Id.* at 1914. Obviously the assumed deprivation was not, nor could it have been, accompanied by a predeprivation hearing. That being so, the issue is whether the postdeprivation hearing available to the appellant under the law of the State of Arizona satisfies the due process requirement of the Fourteenth Amendment.

We hold that it does. The Supreme Court in *Parratt v. Taylor* indicated that

when no practical way to provide a predeprivation hearing exists, a postdeprivation hearing provided at a "meaningful time and in a meaningful manner" will suffice. *Id.* at 1915. The issue becomes merely whether the remedies available under Arizona law and in the Arizona courts constitute the postdeprivation hearing required by the Fourteenth Amendment. As already mentioned, counsel have informed us that certain proceedings growing out of the incidents related by the complaint before us already have taken place. This indicates not only the existence of postdeprivation remedies under Arizona law, but also that appellant has pursued those remedies. Thus, our task is made less difficult than that of the *Parratt* Court, which relied on the mere existence of state tort procedures to find that due process concerns had been met, despite the plaintiff's failure to take advantage of those procedures. In the instant case, since appellant has sought redress in the Arizona state courts, and in the absence of suggestion that the postdeprivation procedures under state law are deficient, we must conclude that the alleged deprivation was not without due process of law. That the effect of our holding is to relegate appellant to his tort law remedy under Arizona law for Kush's alleged assault and battery should surprise no one. That is the consequence of *Parratt v. Taylor* as applied to this action of Kush.

### 2. Demotion of Appellant.

■ As already indicated, to state a claim under 42 U.S.C. § 1983, it is necessary that there be a deprivation of a right, privilege, or immunity "secured by the Constitution and laws." Appellant enjoyed no right under the Constitution nor under the laws of Arizona to maintain his position as either a first or second string defensive back or as the first string punter. In demoting him, Kush, acting we will assume under color of state law, deprived him of neither "liberty" nor "property." *See Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 159–60 (5th Cir. 1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Albach v. Odle*, 531 F.2d 983 (10th

Cir. 1976) (per curiam); *Parish v. NCAA*, 506 F.2d 1028, 1034 (5th Cir. 1975); *cf. Rivas Tenorio v. Liga Athletica Interuniversitaria*, 554 F.2d 492, 497 (1st Cir. 1977) (participation in intercollegiate athletics not a fundamental right for equal protection analysis). Appellant had no legal guarantee of uninterrupted enjoyment of the status he occupied during the 1977 season. *See Paul v. Davis*, 424 U.S. 693, 701–12, 96 S.Ct. 1155, 1160–1166, 47 L.Ed.2d 405 (1976). Neither was the demotion a "grievous loss" within the meaning of that phrase when employed for purposes of fixing the substantive content of actions cognizable under 42 U.S.C. § 1983. *See Goss v. Lopez*, 419 U.S. 565, 588, 95 S.Ct. 729, 743, 42 L.Ed.2d 725 (1975) (Justice Powell, dissenting).

3. Harassment, Embarrassment and Defamation.

■ Appellant's allegations of harassment, embarrassment, and defamation by Kush also fail to state a claim cognizable under 42 U.S.C. § 1983. This result is compelled by *Paul v. Davis*, 424 U.S. at 701–10, 96 S.Ct. at 1160–1164. Even if, as appellant impliedly alleges, Kush went beyond the usual verbal lashings common to football practice fields his transgressions constitute nothing more than a tort "which the state may protect against ... by virtue of its tort law." *Id.* at 712, 96 S.Ct. at 1165.

4. Deprivation of Appellant's Scholarship and Relationship with Arizona State University.

■ Appellant's complaint makes abundantly clear that, while Kush wanted appellant to get off the team and surrender his scholarship, appellant desired either to "red shirt" or to transfer to another school without suffering the suspension of his eligibility for financial aid for one year as required by the NCAA rules. Kush refused to accede to either request. This refusal does not amount to a deprivation of an interest

in "liberty" or "property" under the authorities previously cited. Appellant had no right guaranteed by state law to enjoy either alternative.

Appellant did enjoy a right against cancellation or "gradation" of his scholarship "during the period of its award" for "athletic reasons" and against revocation except "for good cause, and only after a proper hearing, if so requested." *See* p. 5594, *supra*. We will assume, without deciding, that these NCAA rules created an interest in "property" within the meaning of the Fourteenth Amendment. Our difficulty is that the appellant has failed to allege a "deprivation" of these rights. His allegations do not even reveal the "period of the scholarship award" or that he requested a hearing pursuant to NCAA rules. Nor does appellant explain how his scholarship or NCAA rules created a *right* to be red-shirted or to transfer without loss of eligibility under these circumstances. Furthermore, the issue of Kush's consent to a restriction-free transfer arose, indeed only could arise, when appellant sought to surrender his scholarship and continue his football career without interruption and with immediately available scholarship aid at a school other than Arizona State University. Kush's failure to assist him in this endeavor could in no way have infringed the appellant's continued enjoyment of scholarship rights at Arizona State University. Kush's refusal deprived appellant of no interest in "property" within the meaning of the Fourteenth Amendment. The interest in "property" we have assumed *arguendo* that appellant possessed was not that of which appellant asserts he was deprived.

We, therefore, conclude that Count Four has failed to state a claim cognizable under 42 U.S.C. § 1983.

B. *Count Five*

The final count of appellant's complaint, which we set out fully in the margin,[1] pur-

---

1. Count Five of the complaint reads as follows:
 COUNT FIVE
 *RUTLEDGE v. KUSH, MILLER and HORTON*
 55. Paragraphs 1 through 54 are incorporated herein by reference as if more fully set forth at length.

56. On information and belief, since the time of filing the statutorily mandated claim with the Arizona Board of Regents, defendants Kush, Miller and Horton have conspired to prevent, by intimidation and threat, various material witnesses from freely, fully and truthfully

ports to allege claims under both sections 1983 and 1985(2). ₒ The gist of the complaint is that Kush, Miller, and Horton have conspired to intimidate witnesses to prevent such "witnesses from freely, fully and truthfully testifying as to matters raised in the within complaint."

The district court held this count failed because appellant did not allege that the conspiracy was in any way related to his membership in a class and because the count was too conclusory to state a valid claim. We hold that the district court erred in holding by implication that the first por-

tion of section 1985(2), which is set forth in the margin,[2] is applicable only when the intimidation is related to invidious discrimination against a class. We also hold that appellant has sufficiently alleged a claim under the first portion of section 1985(2).

 We recognize that the first of these holdings places us alongside the District of Columbia Circuit and the Third Circuit and in opposition to the Fifth and Eighth Circuits.[3] Like the District of Columbia and Third Circuits, we are guided by the plain language of the first part of section 1985(2)

---

testifying as to matters raised in the within complaint.

57. On information and belief, since the time of filing the statutorily mandated claim with the Arizona Board of Regents, defendants Kush, Miller and Horton have conspired for the purpose of hindering or obstructing the due course of justice with an intent to deny the plaintiff equal protection of the laws by threatening and intimidating potential material witnesses, to prevent the plaintiff from lawfully enforcing his rights and to "cover up" the wrongful acts of defendants Kush and Maskill.

58. Since the filing of plaintiff's claim with the Arizona Board of Regents, defendants Kush and Miller have willfully and maliciously published and disseminated false and inflammatory statements regarding the plaintiff for the purpose of inciting "fans" of Kush to intimidate plaintiff and plaintiff's family in order to deter and discourage plaintiff from enforcing his legal right to pursue claims against the defendants for the actions described herein.

59. The acts of defendants Kush, Miller and Horton as described above did constitute a conspiracy to deny the plaintiff equal protection of the laws and equal privileges and immunities under the laws. The acts of defendants Kush, Miller and Horton were intended to so deprive the plaintiff of his equal privileges and immunities under the laws and have and will result in injury to the plaintiff.

60. The aforementioned acts of defendants Kush, Miller and Horton constitute violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2).

61. As a result of the aforementioned conduct of Kush, Miller and Horton the plaintiff has and will suffer damages in an as yet undetermined amount.

62. The aforementioned conduct of defendants Kush, Miller and Horton was willful and deliberate and warrants the award of punitive damages in an amount of One Million Dollars ($1,000,000.00).

WHEREFORE, Kevin Rutledge prays:

A. That the Court temporarily restrain and permanently enjoined defendants Kush, Miller and Horton from any further violations of 42 U.S.C. § 1985.

B. For Judgment against Frank Kush, Fred L. Miller and Gary Horton for:
1. Actual damages in an amount to be determined.
2. Punitive or exemplary damages in an amount in excess of One Million Dollars ($1,000,000.00).
3. Reasonable attorneys fees.
4. Costs incurred herein.
5. Interest on the amount of judgment at the lawful rate from the date of same until paid.

2. That portion reads as follows:

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror;

3. See McCord v. Bailey, 636 F.2d 606, 614–17 (D.C.Cir.1980); Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976) (class-based invidious discrimination not required under first part of section 1985(2)). But see Kimble v. McDuffy, 648 F.2d 340, 346–48 (5th Cir. 1981) (en banc); Jones v. United States, 536 F.2d 269, 271 (8th Cir. 1976) (class-based animus required under first part of section 1985(2)).

and the legislative history which indicates clearly that the constitutional concerns that led to restricting the second part of section 1985(2) to deprivations of equal protection of the laws were not applicable to that section's first part. That part was designed to protect the federal government's interest in its own courts. No constitutional doubt with respect to the power of the federal government to protect that interest existed in 1871 nor does any exist today. To require that a class-based discriminatory intent be shown to establish a cause of action under the first part of section 1985(2) would attribute to Congress in 1871 a constitutional concern that did not exist. *See McCord v. Bailey*, 636 F.2d 606, 616 (D.C.Cir.1980).

The teaching of *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), is not to the contrary. There the Court sought to interpret section 1985(3) in a manner that was responsive to the desire of Congress to avoid the inescapable constitutional issue that would have attended enactment of a general federal tort law. This was accomplished by limiting the scope of that subsection to those private conspiracies behind which lie some racial or class-based invidiously discriminatory animus. *Id.* at 102, 91 S.Ct. at 1798. Part one of section 1985(2) requires no such limitation because it is limited by its terms to private conspiracies designed to obstruct certain processes of "any court of the United States." This provision has within it no seeds from which could spring a general federal tort law.

The same cannot be said with confidence about the second part of section 1985(2) which is concerned with private conspiracies to defeat the course of justice in state courts "with the intent to deny to any citizen the equal protection of the laws." To require a racial or class-based invidiously discriminatory animus behind the private conspiracy involving this part of section 1985(2) is entirely proper. This court has so held. *See Phillips v. Bridge Workers Local 118*, 556 F.2d 939, 940–41 (9th Cir. 1977). No case in this circuit has been brought to our attention, nor have we been able to discover any, that imposed a similar requirement with respect to the first part.

Whether appellant has adequately alleged a claim under the first part of section 1985(2) is a close question. Certainly he has failed to allege a proper claim under its second part because, although the allegations of Count Five set forth a private conspiracy designed to obstruct the due course of justice at the state level, there exists no sufficient allegation of racial or class-based invidiously discriminatory animus. However, we conclude that appellant's Count Five sufficiently alleges a claim under part one of section 1985(2) to escape a motion to dismiss. We are influenced in reaching this decision by the fact that the proper scope of part one of section 1985(2) previously has been uncertain and that the relationship between the parts of section 1985(2) has been obscure to some extent. On remand the district court may wish to require the appellant to amend Count Five to make more particular his allegations under part one of section 1985(2) and to eliminate those allegations pertaining to the second part of that section. Nothing in this opinion should be construed to prevent this course of action.

In view of these holdings it is not necessary to address Count Five's allegation that Kush, Miller, and Horton violated section 1983 as well.

## V.

### TAXATION OF COSTS

The appeal from the taxation of costs against the appellant presents a difficult question. Appellees Arizona Board of Regents and Arizona State University have prevailed. Appellees Miller, Kush, Maskill, and Horton have prevailed only in part to this point in the proceedings. It strikes us that the proper course for this court to take is to reverse the district court's taxation of costs in its entirety and to remand to the district court to reconsider the taxation of costs in the light of this opinion and such further proceedings in this case as might occur. In reversing and remanding it should be understood that we intend to

express no opinion regarding the propriety of the taxation of individual items of cost incurred by individual or institutional appellees. Our reversal rests solely on the ground that taxation of costs against the appellant at this stage of the proceedings is premature.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.