Bernard JUNCKER

v.

James P. TINNEY, III, et al.

Civ. No. Y–80–2963.

United States District Court,
D. Maryland.

Sept. 3, 1982.

Bernard Juncker, pro se.

Carmina Szunyog, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff, an inmate at the Maryland Correctional Institution, brings the following claim under 42 U.S.C. § 1983:

> In all cells within the institution, there are radiators that get extremely hot. There are no covers on said radiators to protect inmates from sustaining severe burns. On October 22, 1980, I was severely burnt on my radiator.

He seeks $110,000 in compensatory damages and an injunction directing the defendants to place protective coverings on all radiators in the institution.

The defendants moved to dismiss, on the ground that allegations of negligence fail to state a claim under § 1983. This position is no longer tenable in light of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (hereinafter *Parratt*), decided after defendants' motion. However, *Parratt* raises the question of whether plaintiff fails to state a claim for a different, but related, reason.

In *Parratt,* an inmate alleged that certain hobby materials that he had ordered by mail were lost because the normal prison procedures for handling mail packages were not followed. The inmate sued certain prison officials under 42 U.S.C. § 1983 to recover the value of the hobby materials, claiming that the officials had negligently deprived him of a property interest without due process of law, in violation of the Fourteenth Amendment. The Court held that, despite the fact that the plaintiff alleged only negligence on the part of the prison officials, plaintiff's claim met the three prerequisites of a due process claim, namely, that the prison officials acted under color of state law, that the hobby materials fell within the definition of property and that the officials' acts deprived the inmate of that property. *Id.* at 536–37, 101 S.Ct. at 1913–14. Nevertheless, the Court held that the inmate failed to state a claim under § 1983, because the deprivation was not without due process of law.

The Court observed that [this case involves]

> a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the

State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation.

*Id.* at 541, 101 S.Ct. at 1915. Relying upon the principal that due process does not always require a pre-deprivation hearing when the State takes a person's property, the Court held that the inmate's post-deprivation remedy in the form of a lawsuit brought under the state tort claims act satisfied the requirements of due process. Therefore, the Court held, the alleged deprivation, while wrongful, was not "without due process of law," and the inmate's claim failed to state a cause of action under 42 U.S.C. § 1983.

As in *Parratt,* the instant case involves alleged negligence on the part of defendants in permitting hazardous conditions to exist in the prison. Unlike *Parratt,* this case involves not a property interest but a liberty interest, namely, plaintiff's right not to be subjected to physical injury without due process of law. The question thus before the Court is whether the analysis in *Parratt* applies to a case involving negligent deprivation of a liberty interest.

The lower courts have divided on this issue. Two courts have applied *Parratt* to negligent deprivations of liberty interests. *Eberle v. Baumfalk,* 524 F.Supp. 515 (N.D. Ill. 1981); *Peery v. Davis,* 524 F.Supp. 107 (E.D.Va. 1981). One court has refused this application. *Haygood v. Younger,* 527 F.Supp. 808 (E.D.Cal. 1981). Two other courts discussed *Parratt* and held that plaintiff stated a 1983 claim for negligent deprivation of a liberty interest, without specifically considering whether plaintiff had state remedies that satisfied due process. *Riley v. Johnson,* 528 F.Supp. 333 (E.D. Mich. 1981); *Watson v. McGee,* 527 F.Supp. 234 (S.D.Oh. 1981).

Two courts have applied *Parratt* to intentional deprivations of liberty interests. *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.1982); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981). Two courts have refused to follow this reasoning. *Wakinekona v. Olim,* 664 F.2d 708 (9th Cir. 1981); *Bryant v. Commissioner of Social Services of City of New York,* 530 F.Supp. 1175 (S.D.N.Y. 1982).

One Court has applied *Parratt* to a negligent deprivation of a life interest. *Meshkov v. Abington Township,* 517 F.Supp. 1280 (E.D.Pa. 1981).

This Court holds that *Parratt* applies to the negligent deprivation of a liberty interest.

■ The logic of *Parratt* permits no principled distinction between deprivations of property and liberty interests. If a deprivation results from a "random and unauthorized act" by a state official, the State is no more able to predict the deprivation, and a pre-deprivation hearing is no more possible, when the deprivation involves a liberty interest than when it involves a property interest. Therefore, if plaintiff has an adequate post-deprivation remedy in state court, that should satisfy the requirements of due process and plaintiff should not be permitted to bring a § 1983 claim in federal court.

Certain language in *Parratt* concerning the relationship between that case and an earlier case, *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (hereinafter *Ingraham*), strongly suggests that the majority in *Parratt* believed that their reasoning would apply to a case involving a liberty interest. In *Ingraham,* students at a Florida junior high school claimed that corporal punishment violated their constitutional rights. The Court held that, while the Eighth Amendment Cruel and Unusual Punishment Clause does not apply to corporal punishment in public schools, the students' Fourteenth Amendment rights were implicated because there was a liberty interest at stake. Nevertheless, the Court concluded that plaintiffs failed to state a claim under 42 U.S.C. §§ 1981–88. The Court held that plaintiffs' remedy in state court, in the form of a tort action for excessive corporal punishment, constituted due process, and that plaintiffs

therefore had not been deprived of a liberty interest without due process of law. By way of explanation, the Court quoted the following passage from a law review article:

"[P]rior hearings might well be dispensed with in many circumstances in which the state's conduct, if not adequately justified, would constitute a common-law tort. This would leave the injured plaintiff in precisely the same posture as a common-law plaintiff, and this procedural consequence would be quite harmonious with the substantive view that the fourteenth amendment encompasses the same liberties as those protected by the common law." Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405, 413 (1977) (footnote omitted).

430 U.S. at 679, n. 47, 97 S.Ct. at 1416 n. 47.

*Parratt,* at 542–43, 101 S.Ct. at 1916–17, relied upon the *Ingraham* analysis and stated that the reasoning of *Parratt* was consistent with the earlier case. This clearly suggests that the Supreme Court considers it appropriate to apply the *Parratt* analysis to cases involving deprivations of liberty interests.[1,2] This conclusion is further supported by the concluding paragraph of *Parratt,* suggesting that certain personal injury cases should not be brought under § 1983:

Our decision today is fully consistent with our prior cases. To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any

logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

451 U.S. at 544, 101 S.Ct. at 1917.

Several other Supreme Court cases hold that a tort claim involving a liberty interest does not state a claim under § 1983 merely because the alleged tortfeasor was a state official. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff alleged that police officials injured his reputation by circulating a flyer that incorrectly identified him as a shoplifter. The Court held that this stated a classic claim for defamation under state tort law and that plaintiff therefore failed to state a claim under § 1983.[3] In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court held that medical malpractice does not become a constitutional violation merely because the victim is an inmate in a state prison. In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Court held that a claim of false imprisonment against a sheriff failed to state a claim under § 1983, because, while the detention may have been tortious, it was not a violation of rights protected by the Constitution.

1. As a majority in *Parratt* recognized, *Ingraham* involved particularly egregious facts, since the complaint alleged an intentional violation of a liberty interest. 451 U.S. at 542, 101 S.Ct. at 1916. It therefore seems clear that the majority in *Parratt* would apply this analysis to a case involving only negligent deprivation of a liberty interest.

2. *Contra, Parratt* at 545, 101 S.Ct. at 1918 (White, J., and Blackmun, J., concurring) (*Par-*

*ratt* should not be read as applying to life and liberty interests).

3. The Court in *Paul,* at 698, 96 S.Ct. at 1159, cited as other examples of claims that should not be cognizable under § 1983 the claims of the survivors of an innocent bystander accidentally shot by a policeman or negligently killed by a sheriff driving a government vehicle.

578

While most courts which have refused to apply *Parratt* to liberty interest have done so with little or no analysis, the court in *Haygood v. Younger,* 527 F.Supp. 808 (E.D. Cal. 1981) (hereinafter *Haygood*), articulates several concerns. In that case, plaintiff was held in a California prison five years longer than permitted under law, and he subsequently sued two officials in charge of prison records for damages under § 1983. The court refused to apply *Parratt* and denied defendants' motion for judgment NOV.[4]

The court argued that if *Parratt* were applied to cases involving liberty and life interests, this would relegate to the state courts so large a portion of § 1983 cases as to constitute in effect an exhaustion requirement,[5, 6] which the courts have consistently rejected under § 1983. This is simply incorrect; there is no connection between an exhaustion requirement and the policy of applying *Parratt* to all § 1983 cases.[7] The argument for applying *Parratt* to liberty and life interest (and thus for sending many purported § 1983 cases to state court) is based not upon principles of comity but upon the language of the Fourteenth Amendment and upon the concept that in certain situations a complaint fails to state a claim under the Fourteenth Amendment because the plaintiff has not been deprived of a constitutional right without due process of law. Proof of this difference lies in the different results. Under an exhaustion requirement, a plaintiff may sue in federal court after he has exhausted his state remedies. Under the *Parratt* analysis, if a plaintiff fails to state a claim under § 1983, he has no cause of action in federal court, and may sue only in state court.

The court in *Haygood* also argued that more process is due in the case of liberty and life interests than in the case of property interest. The court reasoned that, while a post-deprivation tort remedy in state court can make a plaintiff whole when he has been deprived of property, no post-deprivation relief can truly compensate a plaintiff for a loss of his liberty. While this is true, it does not support the conclusion that a post-deprivation hearing does not constitute due process. The basis for permitting a post-deprivation hearing, under *Parratt,* is that the deprivation resulted from a "random and unauthorized act" (or omission), which the State is not responsible for predicting, and that, therefore, a pre-deprivation hearing was not *possible.* Thus, if the State provides an adequate (even though imperfect) post-deprivation remedy, that meets the requirements of due process.

A related argument made by the *Haygood* court is that the proposed application of *Parratt* implies that a State may, consistent with the Due Process Clause, violate a plaintiff's constitutional rights as long as the State is willing to pay compensatory damages. This argument is totally spurious. The only effect of the decision whether to apply *Parratt* is to determine whether plaintiff may bring suit in federal court or only in state court. Regardless of which court plaintiff may sue in, the deprivation has already occurred and the best plaintiff can do is obtain compensation. Moreover, it is important to remember that the premise of the *Parratt* analysis is that the deprivation occurred in a manner which the State could not predict. If the State systematically violated individuals' constitutional rights in a particular way, this would create a pattern or "custom," about which the

4. While this Court rejects the reasoning of *Haygood,* this Court would have reached the same result. The alleged deprivation is so extreme as to "shock the conscience of the court," and plaintiff therefore states a claim for violation of his substantive due process rights under the Fourteenth Amendment. *See infra.*

5. This concern was also raised in *Wakinekona, supra,* 664 F.2d 708.

6. A closely related concern is that the relegation of large numbers of civil rights actions to state court would defeat the purpose of § 1983 of providing a remedy supplemental to any remedies available in state court. This criticism is addressed at length *infra.*

7. Strong evidence of this is the fact that the Court in *Parratt* did not think it necessary to mention the impact of that decision on the no-exhaustion doctrine.

State arguably knew or should have known. Under these circumstances, a plaintiff would state a claim under § 1983. *See Parratt* at 541, 101 S.Ct. at 1915 (plaintiff would state a claim, regardless of state remedies, if he alleged that the deprivation resulted from established state procedures).

Based on the precedent and the ineluctable logic of *Parratt,* the Court concludes that the *Parratt* analysis applies to cases involving deprivations of liberty interests. In the instant case, plaintiff alleges that the negligence of the two defendants resulted in his being deprived of a liberty interest; there is no allegation that an established state procedure caused the deprivation. Therefore, the *Parratt* analysis applies to the facts of this case.

■ Since the plaintiff here may seek both damages and injunctive relief [8] in a personal injury action in state court, there is no question that the relief available to plaintiff in state court is adequate. However, under Maryland law the defendants in this case might be able to raise the affirmative defense of good faith immunity. *See James v. Prince George's County,* 288 Md. 315, 323–24, 418 A.2d 1173 (1980). Justice Powell in his concurring opinion in *Parratt,* at 550–51, 101 S.Ct. at 1915–16, suggests that an immunity doctrine that prevents a plaintiff from recovering from a state official may make the state tort remedy "inadequate," thus allowing the claim to be brought in federal court.[9] While this might

be true in the case of sovereign or other absolute immunity, Maryland's qualified, good faith immunity does not render plaintiff's tort remedy inadequate under *Parratt.*[10] *See Sheppard v. Moore,* 514 F.Supp. 1372, 1377.

Qualified immunity is an affirmative defense, a fact which makes it inappropriate, on two grounds, for a federal court to consider the issue of qualified immunity in ruling on a motion to dismiss a § 1983 suit for failure to state a claim. First, since the defendants might choose to waive the defense, it is illogical for the federal court to assume that the defense will be pleaded.

■ Second, since a qualified immunity defense entails the presentation of evidence, it cannot be addressed in a motion to dismiss, but rather must await the development of evidence in a motion for summary judgment or at trial. If the federal court were to attempt to determine the impact of the good faith immunity defense upon plaintiff's cause of action in state court, the federal court would first have to determine whether the defendants were public officials acting in a discretionary capacity and therefore were entitled to raise the defense. *See James, supra,* 288 Md. at 323–24, 418 A.2d 1173. Since plaintiff's remedy in state court is affected not by the defendants' ability to raise the affirmative defense, but only if they prevail in the defense, the federal court would also have to address the merits of the defense, that is, the question

---

**8.** Plaintiff, who is suing only on his own behalf, would, if he prevailed, presumably be entitled only to an injunction directing the defendants to place a protective cover over his radiator, and not an injunction ordering protective covers for all radiators. This is true whether plaintiff sues in tort or under § 1983.

**9.** This issue did not arise in *Parratt,* because Nebraska had a tort claims act.

**10.** Several courts have held that State common law remedies satisfy the requirements of due process under *Parratt. Ellis v. Hamilton,* 669 F.2d 510, 514 (7th Cir.1982); *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981); *Eberle v. Baumfalk,* 524 F.Supp. 515, 518 (N.D.Ill. 1981); *Peery v. Davis,* 524 F.Supp. 107, 108 (E.D.Va. 1981); *Meshkov v. Abington Tp.,* 517 F.Supp. 1280 (E.D.Pa. 1981). In addi-

tion, several pre-*Parratt* Supreme Court cases dismissed § 1983 claims on the ground that they were tort claims that could be pursued under state common law. *Baker v. McCollan,* 443 U.S. 137, 142, 146, 99 S.Ct. 2689, 2693, 2695, 61 L.Ed.2d 433 (1979); *Ingraham v. Wright,* 430 U.S. 651, 677 (1977); *Paul v. Davis,* 424 U.S. 693, 697, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1976). Because most states have a qualified, good faith immunity for public officials, Prosser, *Torts* (4th ed.), § 132 at 989, a holding that such an affirmative defense makes the remedy of a common law tort action "inadequate" under *Parratt* would limit the applicability of *Parratt* to states with tort claims acts. Since Maryland has no tort claims act, *Parratt* would have no application whatever in Maryland.

of whether defendants acted with malice. *See id.* This determination would necessitate virtually the same findings of fact as would be required to dispose of the case on the merits.

The federal court should treat the qualified immunity defense no differently than any other defense that the defendants might raise in state court. Plaintiff's remedy in state court would be seriously affected if the defendants were to prevail on any defense. This fact cannot concern the federal court, because that court cannot be expected to try the case on the merits in order simply to rule on a motion to dismiss.

■ This is particularly true in the case of Maryland's qualified, good faith immunity defense, because virtually the same defense is available in a § 1983 action in federal court. In *Imbler v. Pachtman,* 424 U.S. 409, 419, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976), the court stated that:

> In *Scheuer* [*v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)] and in *Wood* [*v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)], as in the two earlier cases, the considerations underlying the nature of the immunity of the respective officials in suits at common law led to essentially the same immunity under § 1983.

Under both Maryland and federal law, a defendant may raise good faith immunity as a defense only if: (1) he is a public official; *James, supra,* at 323–24, 418 A.2d 1173; *Wood, supra,* at 316, 322, 95 S.Ct., at 998, 1000; *Scheuer, supra,* at 240, 94 S.Ct., at 1688; and (2) he was performing discretionary acts. *James, supra,* at 323–24, 418 A.2d 1173; *Wood, supra,* at 319, 95 S.Ct., at 999; *Scheuer, supra,* at 241–42, 247, 94 S.Ct., at 1688–89, 1691. Under both Maryland and federal law, the defendant is immune only if he acted without malice. *James, supra,* at 323–24, 418 A.2d 1173; *Wood, supra,* at 322, 95 S.Ct., at 1000; *Scheuer, supra,* at 247–48, 94 S.Ct., at 1691–92. Under federal law, there is the addi-

tional requirement that defendant not have known or have had reason to know that his actions would violate plaintiff's constitutional rights. *Wood, supra,* at 322, 95 S.Ct., at 1000. Thus, with one exception, the qualified good faith immunity available to a defendant in a federal § 1983 suit is the same as that available to a defendant in a Maryland tort action. Therefore, even without the evidentiary problems discussed above, there would be no sense in holding that a plaintiff is entitled to bring a § 1983 action in federal court on the ground that he is subject to the good faith immunity defense in Maryland.

For these reasons, the Court finds that plaintiff's tort remedy in state court meets the requirements of due process, and that the complaint fails to state a claim of deprivation of property without due process of law.

However, that conclusion does not dispose of the motion to dismiss. In the Fourth Circuit, when a plaintiff attempts to base a § 1983 claim upon a violation of the Due Process Clause alone, a District Court ruling on a motion to dismiss for failure to state a claim cannot stop with a mere parroting of the *Parratt* procedural analysis, but must consider, additionally, the possibility that plaintiff has stated a substantive due process claim.

In *Ingraham, supra,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, the Court held that the Eighth Amendment bar against cruel and unusual punishment did not apply to corporal punishment and that plaintiffs failed to state a claim for deprivation of liberty without due process of law, because the common law tort remedies for excessive corporal punishment constituted due process. *Parratt,* at 542–43, 101 S.Ct. 1916–17, relied on the analysis in *Ingraham* and is in fact merely an elaboration of the earlier case.

*Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980), was a § 1983 suit involving corporal punishment. The court noted that the Court in *Ingraham* had explicitly declined

to rule on the question of whether corporal punishment could serve as the basis for a claim of violation of "substantive rights under the Due Process Clause." *Hall* at 610, *quoting Ingraham,* at 679, n. 47, 97 S.Ct. at 1416, n. 47. The Fourth Circuit, while recognizing that not every tort becomes a "constitutional tort" under § 1983 simply because the actor was a state official, held that the Fourteenth Amendment protected certain substantive due process rights, namely,

> the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.

621 F.2d at 613. Observing that the complaint alleged that the student subjected to corporal punishment had to be hospitalized for ten days, the court held that it was not possible to conclude from the complaint that plaintiff could prove no set of facts in support of a substantive due process claim and that dismissal was therefore inappropriate.

▇ In the instant case, plaintiff alleges that he was severely burned by a radiator in his cell and that the defendants are responsible because they failed to provide a protective cover for his radiator. It is conceivable that plaintiff could prove that he complained repeatedly of the potential danger of the unprotected radiator, that defendants ignored his complaints and that he suffered a severe burn. While these facts might be sufficient to establish that defendants were negligent and that plaintiff is

entitled to damages, there is nothing in even this ideal version of plaintiff's case that "shocks the conscience of the Court." Therefore, plaintiff fails to state a claim of violation of his Fourteenth Amendment right to substantive due process.[11]

This conclusion, together with the holding, reached under *Parratt,* that plaintiff has no procedural due process claim, means that plaintiff fails to state a claim under the Due Process Clause of the Fourteenth Amendment.

▇ All that remains is to determine whether the complaint states a claim under any section of the Constitution other than the Due Process Clause. Construing the complaint liberally, as required by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is possible to read the complaint as alleging that the conditions of plaintiff's cell are so bad as to constitute a violation of his Eighth Amendment right to be free of cruel and unusual punishment. However, while the Court must construe the complaint liberally in order to determine what the complaint alleges, the Court need not hear the case unless it in fact states a valid claim under the Eighth Amendment.[12]

Allegedly onerous prison conditions may constitute cruel punishment if they appear cruel and unusual "under the contemporary standard of decency," *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), or if the conditions are so poor as to be "repugnant to the conscience of mankind."[13] *See Estelle v. Gamble,* 429

---

**11.** *See also* the analysis, *infra,* of whether the complaint states a claim of cruel and unusual punishment.

**12.** It is not enough to determine that a complaint makes a conclusory allegation of another constitutional or statutory violation, or, in the case of a *pro se* complaint, that it can be read as alleging such a violation. Rather, the court must determine whether the facts as alleged legitimately support such a claim. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (while plaintiff alleged a violation of his Eighth Amendment rights, his complaint did not allege deliberate indifference

to serious medical needs and therefore failed to state a claim under § 1983).

**13.** This standard is very similar to the "shocks the conscience of the court" standard for identifying substantive due process claims. *See supra.* The Seventh Circuit has held that "[i]n order to establish a violation of the Eighth Amendment, a plaintiff must show that prison officials ... knowingly maintained conditions so harsh as to shock the general conscience." *Stringer v. Rowe,* 616 F.2d 993, 998 (7th Cir. 1980).

U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). In *Rhodes, supra,* at 347, 101 S.Ct., at 2399, the Court held that prison conditions may constitute cruel and unusual punishment if they

(1) result in "the wanton and unnecessary infliction of pain;"

(2) are "grossly disproportionate to the severity of the crime warranting imprisonment;" or

(3) result in "unquestioned and serious deprivation of basic human needs."

■ Even assuming that plaintiff could prove the best possible case based on his allegations, *see supra,* it is not conceivable that he could prove the existence of conditions that would even approach the level of oppressiveness contemplated by this standard. A hot radiator simply cannot be "repugnant to the conscience of mankind." While a radiator cover might improve the condition of plaintiff's cell, "[t]he Constitution does not require that sentenced prisoners be provided with every amenity which one might find desirable." *Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds, sub nom Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Large numbers of people in the population at large, especially senior citizens, poor families and students, face the same problem of hot radiators in small rooms and recalcitrant landlords. Just as medical malpractice does not become a constitutional tort merely because the victim is a prisoner, so does negligence with respect to institutional radiators not become a constitutional tort merely because the victim is a prisoner.

■ To summarize and reorganize, when a defendant moves to dismiss a § 1983 complaint on the basis of *Parratt,* a four-step analysis is required in order to determine whether the complaint states a claim under § 1983. As a preliminary matter, the court must determine whether the complaint states a claim under any constitutional or statutory provision other than the Due Process Clause of the Fourteenth Amendment. If it does, the complaint states a claim under § 1983 and there is no need to apply *Parratt.* If the complaint alleges only a violation of plaintiff's Fourteenth Amendment rights, the court must proceed to apply *Parratt.*

First, the court must determine whether the complaint alleges that the deprivation resulted from the application of an established state procedure or from a random and unauthorized act of the defendant(s). If the complaint alleges the former, it states a claim under § 1983. If not, the court must next apply the literal *Parratt* analysis to determine whether plaintiff has state remedies that satisfy the requirements of due process. If he does not, then he states a claim under § 1983. However, if he does have adequate state remedies, that does not end the matter. The court must then determine whether the complaint states a claim of violation of substantive due process rights. If it does, plaintiff has a federal cause of action. If the complaint does not state a substantive due process claim, the complaint has failed all four steps of the test and it must be dismissed for failure to state a claim under § 1983.

■ This careful screening should answer any concerns that the application of *Parratt* may lead to a rejection of the policy that § 1983 is intended to supplement remedies available in state court.[14] Section 1983 has become a standard basis for federal litigation only since the Supreme Court holding in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that a complaint can state a claim under § 1983 even where state tort common law remedies provide an adequate remedy. Whitman, *Constitutional Torts,* 79 Mich.L.Rev. 5, 5–6

---

14. For a detailed discussion of this policy, *see Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Whitman, *Constitutional Torts,* 79 Mich.L.Rev. 5 (1980).

(1980). However, § 1983 is intended to provide a remedy (and thus a supplemental remedy) only when the defendant's alleged conduct rises to the level of a violation of the federal constitutional or a federal statute. In *Monroe, supra,* the complaint rose to this level because plaintiff's claim of an illegal search and seizure stated a Fourth Amendment claim; therefore, the Court held it irrelevant that state statute and constitution also prohibited the defendants' alleged conduct. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Court held that plaintiffs' complaints of tortious injuries, while they stated claims under state tort law, failed to state claims under § 1983 because the alleged conduct did not violate any constitutional right; that is, the plaintiffs alleged mere torts and not constitutional torts.

While, in those cases, the Court did not develop a precise test for determining when a mere tort became a constitutional tort, *Parratt* was an effort to introduce some rigor to an otherwise highly subjective decision. When the logic of *Parratt* is combined with the requirements of substantive due process and the proposition that *Parratt* does not apply when the complaint alleges a violation of a constitutional provision other than the Due Process Clause, the result is an objective test for determining when a tort claim states a cause of action under § 1983. The four-part test will allow a § 1983 action if the complaint:

1. alleges that the violation resulted from an established state procedure;

2. states a claim under some constitutional provision other than the Fourteenth Amendment; or

3. alleges conduct that shocks the conscience of the court.

The result of the test is to allow a federal cause of action for constitutional claims and to relegate to state court mere tort claims such as the instant complaint. This result maintains § 1983 as a supplemental remedy for constitutional violations but frees the overburdened federal courts of mere tort claims.[15]

For the reasons stated herein, it is this 3rd day of September, 1982, by the United States District Court for the District of Maryland, ORDERED:

That the complaint BE, and the same IS, hereby DISMISSED.

---

**15.** Judge Phillips, United States Court of Appeals for the Fourth Circuit, made some incisive comments on the status of the Circuit's calendar in the Foreward to the Fourth Circuit Review, 39 W. and L.L.Rev. 425 (1982), noting that, in 1980, "state prisoner claims filed in the Fourth Circuit constituted almost a third (32.2%) of all such cases filed nationally," and in 1981, "state prisoner claims made up slightly more than a third (35.2%) of the total." Noting that the volume of such cases is the most serious ongoing problem confronting the Court, Judge Phillips stated that in his opinion, "it is beyond dispute that the overall energies and resources of the Court are being inefficiently and distressingly directed to the resolution of a set of cases that demonstrably now only rarely include any that are revealed in the end to have merit." It is hopeful that the procedures and safeguards suggested in this Opinion can provide some relief to the dismay and frustration referred to by Judge Phillips without wrenching "the rules to make them work."