ALFRED J. TAI, Petitioner-Appellant *v.* ANDREW I. T.
    CHANG, Director, Department of Social Services and
    Housing, Respondent-Appellee

NO. 5995

October 17, 1977

RICHARDSON, C. J., KOBAYASHI, OGATA,
MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Appellant[1] filed a petition in the court below for a writ of
habeas corpus and for injunctive relief. He alleged that his
transfer by the Director of Social Services[2] in 1966 from the
Hawaii State Prison to the United States Penitentiary in
Atlanta, Georgia, was unlawful in three respects: first, he was
transferred pursuant to an *unpublished rule* of the Depart-
ment of Social Services governing the transfer of prisoners;
second, his transfer occurred *without any prior hearing*
provided to him; and third, a memorandum signed by the
Governor of Hawaii was the only evidence showing the
governor's *approval* of appellant's transfer. The lower court
dismissed appellant's petition, holding that the Hawaii Ad-
ministrative Procedure Act[3] (hereinafter cited as HAPA) was

---

[1] Alfred J. Tai, a Hawaii State Prisoner serving a term of life without parole for
convictions of robbery in the first degree and of murder in the first degree.
[2] Now the Director of Social Services and Housing.
[3] HRS Ch. 91, *as amended*.

inapplicable to his case and that the governor had approved his transfer as required by HRS § 353-18. We affirm.

### Appellant's Prison Transfer Fell
### Outside the Scope of HAPA

Appellant argues that his transfer was unlawfully accomplished because the Department of Social Services failed to comply with the provisions of HAPA which provide for the publication of agency rules and for a hearing in a contested case. Appellant errs in assuming the applicability of HAPA to his transfer.

The argument based on HAPA's publication requirement fails on two grounds. First, *rules* of government agencies, *e.g.*, the Department of Social Services, must be published in order to be effective. HRS § 91-2(b). Under HAPA, however, the term *rule* is defined to exclude "regulations concerning only the internal management of an agency." HRS § 91-1(4). The legislative history of HAPA discloses that policy decisions regarding state penal institutions were considered to be regulations that involved only the internal management of these institutions. In commenting on the definition of *rule* as used in HAPA, the Standing Committee Report No. 8, 1961 Hawaii House Journal 656, stated:

> It is intended by this definition of "rule" that regulations and policy prescribed and used by an agency principally directed to its staff and its operations are excluded from the definition. In this connection your Committee considers matters relating to the operation and management of state and county penal . . . institutions . . . [to be] primarily a matter of "internal management" [and excluded from] this definition.

Since HAPA's publication requirement does not apply to a policy decision regarding state penal institutions, a regulation that governs the transfer of prisoners is valid even in the absence of its publication. Second, HRS § 353-3 (amended 1973) also takes policy decisions regarding state prisons outside the scope of the publication requirement:

> Rules relating to the conduct and management of [state prisons] and the care, control, treatment, and discipline of prisoners . . . *shall not require publication* in order to be valid and binding upon all inmates . . . of such institutions . . . . (Emphasis added.)

Appellant also argues that the hearing requirement of HAPA, HRS § 91-9(a), applied since his transfer was a *contested case* involving a government agency. HAPA defines *contested case* as "a proceeding in which the legal rights, duties, or privileges of specific parties are *required by law* to be determined after an opportunity for agency hearing." HRS § 91-1(5) (emphasis added). Since the phrase *required by law* embraces both constitutional as well as statutory law, *see Aguiar* v. *Hawaii Housing Authority*, 55 Haw. 478, 496, 522 P.2d 1255, 1267 (1974), ordinarily both would be examined to see if appellant was entitled to a hearing before his transfer. No constitutional issues, however, are before this court as none were raised below.[4] Looking solely to statutory laws, a review of such laws in effect at the time of appellant's transfer in 1966 yields nothing which entitled him to a hearing. Thus, there was no contested case, and HAPA's hearing requirement did not apply.

### The Governor Approved Appellant's Transfer

Finally, appellant contends that his transfer was accomplished in violation of HRS 353-18 which states that the "director of social services shall, *with the approval of the governor,* effect the transfer of a state prisoner to any federal correctional institution." (Emphasis added.) It is undisputed that in 1966 the Governor of Hawaii signed a memorandum submitted to him by the Department of Social Services. This memorandum dealt with a "Request for Out-of-State Travel" and listed as one of its two purposes that of "escorting Hawaii

---

[4] Appellant expressly reserved his federal constitutional claims for his actions filed in federal court. See Tai v. Thompson, 396 F. Supp. 196 (D. Hawaii 1975). State constitutional claims were not raised.

State Prison inmates to United States Penitentiaries''; the memorandum mentioned appellant by his last name. Although the better practice may have been to obtain the governor's signature on a document dealing solely with the approval and the justification of appellant's transfer, that was not required únder HRS § 353-18; only the governor's approval was required. By signing the memorandum, the governor presumably read and understood it. He could not have been unaware of the memorandum's contents mentioning that "authorization ha[d] . . . been received from the Federal Bureau of Prisons for the *transfer* of . . . [appellant]," (emphasis added), and that one purpose of the out-of-state trip by prison officials was to escort prisoners to federal penitentiaries. The governor's signature on such a memorandum was circumstantial evidence that he approved appellant's transfer.

Affirmed.

*James Blanchfield* for petitioner-appellant.

*James P. Dandar*, Deputy Attorney General *(Stuart Phillip Shapiro* with him on the brief), for respondent-appellee.