PETER LONO, Plaintiff-Appellant, *v.* GEORGE ARIYOSHI, individually and in his capacity as Governor of Hawaii; et al., Defendants-Appellees

NO. 6729

JANUARY 2, 1981

RICHARDSON, C.J., MENOR, OGATA, JJ.,
AND RETIRED JUSTICE MARUMOTO, IN PLACE
OF KOBAYASHI, J., EXCUSED*

---

* Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-10 (1979 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by plaintiff Peter Lono from the order of the First Circuit Court dismissing his complaint against the Governor of Hawaii, and other State officials concerned with the administration of Hawaii State Prison (HSP).

In the complaint, plaintiff sought temporary and permanent injunctive relief against his transfer from HSP to a mainland penal institution, and a declaratory judgment that his transfer would be in violation of the constitutions of the United States and the State of Hawaii, and the Supplementary Rules and Regulations of the Corrections Division (Rules) of the State Department of Social Services and Housing (DSSH).

Plaintiff was convicted of murder in the second degree in the First Circuit Court, and was sentenced to a maximum term of 99 years in HSP on November 19, 1970. Thereafter, the following events transpired within the HSP administration:

*January, 1976:* Plaintiff and five other HSP inmates were segregated from the general prison population on the basis of information from confidential sources that they were leaders of an inmate strike. For his participation in the strike, plaintiff was sentenced to one year in the maximum control unit. However, that sentence was suspended, and plaintiff remained in the general prison population.

*Summer, 1976:* State of Hawaii arranged with the Bureau of Prisons, United States Department of Justice (FBP), and the State of California, to transfer HSP inmates to mainland prisons during the construction of new prison facilities in Hawaii.

*September 27, 1976:* HSP administrator submitted a tentative list of eight inmates, including plaintiff, to FBP for its approval. However, no decision to transfer had been made at that time.

*November 8, 1976:* FBP informed HSP administrator that it would accept plaintiff at the Federal prison on McNeil Island, Washington.

*February 11, 1977:* HSP Program Committee (PPC) notified plaintiff to be present at the committee meeting on February 16, 1977, to be held for the following purpose:

> Reason for meeting: To determine whether your classification within the Corrections Division should be changed. The Committee will consider your entire file, your changing needs, resources and facilities available to the Corrections Division, and the security of the State facilities and personnel. The Committee will consider whether you should remain at HSP, or be transferred to a mainland state or federal institution.

*February 22, 1977:* PPC meeting, which was originally scheduled to be held on February 16 was postponed at the request of plaintiff's counsel and was held on this day. At the meeting, PPC chairman read a letter from HSP administrator to a State deputy attorney general regarding plaintiff's organization of the inmate work strike and his segregation from the general inmate population. The administrator declined to testify at the meeting because he was the reviewing officer of PPC findings. PPC also considered information from a confidential source regarding plaintiff's drug involvement and covert backyard predatory activities. At the conclusion of the meeting, PPC recommended that plaintiff be transferred to a mainland Federal prison, pursuant to its findings that (a) plaintiff posed a behaviorial/management problem; (b) his maximum security classification restricted his participation in HSP programs; and (c) there were more programs available to him at a Federal prison.

*March 3, 1977:* HSP administrator sustained PPC recommendation.

On March 16, 1977, plaintiff filed his complaint in the circuit court. The circuit court, after denying the temporary injunctive relief sought by plaintiff, entered its order denying permanent injunction, and dismissing the complaint, on August 11, 1977.

In the meantime, plaintiff was transferred from HSP, first to the Federal prison on McNeil Island, and later to the Federal prison at Marion, Illinois.

On this appeal, plaintiff has presented the following four questions for decision by this court: first, whether the procedure followed by PPC at its meeting on February 22, 1977, violated his due

process rights under the fourteenth amendment of the United States constitution; second, whether it violated his due process rights under Article I, Section 4, of the Hawaii constitution; third, whether it violated his procedural rights under the Rules; and, fourth, whether it violated his procedural rights under the Hawaii Administrative Procedure Act (HAPA).[1]

The first three questions are questions as to which plaintiff sought declaratory judgment in his complaint. The fourth question was not raised by plaintiff in his complaint, or any amendment thereto, but was brought up orally by plaintiff's counsel in his argument in the circuit court.

A state prisoner's procedural rights under the United States constitution are outlined in *Wolff v. McDonnell,* 418 U.S. 539 (1974).

The procedure set forth in *Wolff v. McDonnell* is triggered only when a state action involves an infringement of state prisoner's property or liberty interest. This point is not disputed by plaintiff.[2]

Under *Meachum v. Fano,* 427 U.S. 215 (1976), the only source of a state prisoner's protected interest is state law.

Plaintiff has not contended that he had any property interest which was subject to infringement by his transfer from HSP to a mainland Federal prison.

That narrows our inquiry to whether plaintiff had any liberty interest under Hawaii law which would have triggered the application of the procedural requirements of *Wolff v. McDonnell.*

Plaintiff asserts that HRS § 706-672, and Rule IV of the Rules, clothed him with the requisite liberty interest.

HRS § 706-672 provides that, when a person is sentenced to imprisonment for an indeterminate term, the court shall commit him to the custody of DSSH for the term of his sentence and until he is released in accordance with law; that the court shall determine the initial place of confinement; and that the director of DSSH shall determine the proper program of redirection and any subsequent

---

[1] Article I, Section 4, of the Hawaii constitution, referred to in this case, is incorporated in Article I, Section 5, of the Hawaii constitution, as amended and in force January 1, 1979.

[2] It is stated in plaintiff's opening brief filed in this appeal:

It has long been established that due process is required by the fourteenth amendment only when the state infringes a "liberty" or "property" interest.

place of confinement best suited to meet the individual needs of the committed person.

Rule IV of the Rules, which was in effect at the time plaintiff's hearing was held, dealt with the classification process, as distinguished from the adjustment process, and stated that it never inflicted any punishment but was concerned with a continuing evaluation of each individual inmate to ensure his optimum placement within the Corrections Division.

With regard to HRS § 706-672, plaintiff contends that it provides a prisoner "with the expectation that he will not be moved to another prison unless it is determined that the transfer is better suited to his needs."

Similarly, with respect to Rule IV of the Rules, it is contended that, under the rule, "the prisoner has a justifiable expectation rooted in Hawaii law, that he will not be transferred unless it is determined by an impartial committee that optimum placement lies within another institution."

In connection with plaintiff's contention based on HRS § 706-672, as well as his contention based on Rule IV of the Rules, *Meachum v. Fano, supra,* and *Montanye v. Haymes,* 427 U.S. 236 (1976) are pertinent.

*Meachum v. Fano* presented to the United States Supreme Court two questions for decision on a petition for a writ of certiorari from a judgment of the United States Court of Appeals for the First Circuit.

The first question was whether the United States constitution required Massachusetts correctional officials to conduct fact finding hearings in connection with transfers of duly convicted state prisoners from a medium security correctional facility at Norfolk to maximum security correctional facilities at Walpole and Bridgewater, where the living conditions were substantially less favorable to them than at Norfolk, in the absence of a state law or practice which conditioned such transfers on proof of serious misconduct or occurrence of other specified events. The second question was whether the hearings granted in the case were adequate.

The court answered the first question in the negative. In the light of its answer to the first question, the court did not reach the second question.

In answering the first question in the negative, the court rejected at the outset the notion that any grievous loss visited upon a person

by a state is sufficient to invoke the procedural protections of the due process clause of the constitution, held that the determining factor is the nature of the interest involved, and made the following statements which are equally applicable to the case·at hand:

The initial inquiry is whether the.transfer of respondents from Norfolk to Walpole and Bridgewater infringed or implicated a "liberty" interest of respondents within the meaning of the Due Process Clause. Contrary to the Court of Appeals, we hold that it did not.

\* \* \* \* \*

[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.

\* \* \* \* \*

Transfers between institutions \*\*\* are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate.

\* \* \* \* \*

Here, Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct. Insofar as we are advised, transfers between Massachusetts prisons are not conditioned upon the occurrence of specified events.

\* \* \* \* \*

Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him to whatever·reason or for no reason at all.

*Montanye v. Haymes* was decided by the United States Supreme Court on the same day as *Meachum v. Fano* on a petition for a writ of certiorari from the judgment of the United States Court of Appeals of the Second Circuit.

The case involved the removal of respondent, a New York state prisoner, as inmate clerk in the law library at Attica Correctional

Facility, and his transfer, without a hearing, to Clinton Correctional Facility. Both facilities are maximum security institutions. Respondent's transfer was made for preparing, and circulating among other inmates, a document regarding prison administration in direct disregard of applicable prison rule. The transfer did not involve loss of good time, segregated confinement, loss of privilege, or other disciplinary measures.

Under the New York law, as described in the court's opinion in the case:

(a) adult persons sentenced to imprisonment are not sentenced to particular institutions, but are committed to the custody of the Commissioner of Corrections;

(b) the Commissioner receives adult male felons at a maximum security reception center for initial evaluation and transfer to specified institutions;

(c) the Commissioner may thereafter transfer the inmates from one correction facility to another;

(d) transfers of inmates are not conditioned upon or limited to the occurrence of specific misconduct;

(e) no conditions are imposed on the Commissioner's discretionary power to transfer;

(f) transfers are not among the punishments which may be imposed only after a prison disciplinary hearing.

Upon reviewing the New York law, the court held that respondent had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless he was found guilty of misconduct, and stated:

Whatever part an inmate's behavior may play in a decision to transfer, there is no more basis in New York law for invoking the protections of the Due Process Clause than we found to be the case under the Massachusetts law in the Meachum case.

The provisions of Hawaii law relating to placement and transfers of persons sentenced to imprisonment are substantially the same as the New York law described in *Montanye v. Haymes,* except that, in HRS § 706-672, the words "place of confinement best suited to meet the individual needs of the committed persons" are used in referring to place of confinement upon transfer, and, in Rule IV of the Rules, the words "optimum placement within the Corrections Division" are used in connection with place of confinement upon classification.

In our opinion, the quoted words do not limit the authority of the director of DSSH in selecting a place of confinement upon a decision to transfer or upon classification.

The following language in *Lombardo v. Meachum*, 548 F.2d 13 (1st Cir. 1977), is applicable in construing those words:

The regulations plaintiff relies upon *** simply provide that an inmate will receive a certain type of a hearing before he is re-classified. The regulations contain no standards governing the Commissioner's exercise of his discretion, and they, therefore, cannot create the kind of substantive interest which is required before a state created "liberty" interest can be said to exist.

Similarly, the language in HRS § 706-672 and the language in Rule IV of the Rules, upon which plaintiff relies, contain no standards governing the determination by the director of DSSH of a place of confinement best suited to meet the individual needs of the committed person and optimum placement of the committed person within the Corrections Division, thereby leaving the determination of those matters entirely to the discretion of the director.

Thus, HRS § 706-672 and Rule IV of the Rules did not clothe plaintiff with the requisite liberty interest which would have triggered the application of the procedural requirements under the fourteenth amendment of the United States constitution.

On the question regarding violation of his due process rights under the Hawaii constitution, plaintiff cites *Silver v. Castle Memorial Hospital*, 53 Haw. 475, 497 P.2d 564 (1972), and *Aguiar v. Hawaii Housing Authority*, 55 Haw. 478, 522 P.2d 1255 (1974), and argues that, under Hawaii law, substantiality of interest, rather than its source, gives rise to protected interest.

*Silver v. Castle Memorial Hospital* and *Aguiar v. Hawaii Housing Authority* are not apposite. Both cases involved property interest, and the determining factor was the fact that the plaintiffs in those cases had property interest in the matters in controversy.

We hold that under the Hawaii constitution, the determining factor is the nature of the interest involved, rather than its weight, as the United States Supreme Court held in *Meachum v. Fano, supra,* with respect to procedural protections under the due process clause of the United States constitution.

With respect to plaintiff's contentions based on claim of violation of his procedural rights under the Rules, we find the same to be

without merit, upon a careful examination of the points raised in plaintiff's brief and the relevant provisions of the Rules.

Our answer to the question posed by plaintiff as to whether the procedure followed by PPC at his classification hearing violated his procedural rights under HAPA depends on whether the hearing involved a contested case under HAPA.

HRS § 91-1(5) defines contested case as a proceeding in which legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.

The question posed by plaintiff is answered by *Tai v. Chang,* 58 Haw. 386, 570 P.2d 563 (1977).

In that case, petitioner sought a writ of habeas corpus and injunctive relief in connection with his transfer from HSP to the United States Penitentiary in Atlanta, Georgia, and alleged, as one of the grounds for relief, that he was not accorded a hearing before his transfer.

This court denied the requested relief on the ground that his transfer did not involve a contested case and the HAPA hearing requirement did not apply, stating as its reason for the denial:

> Since the phrase *required* by *law* embraces both constitutional as well as statutory law \*\*\*, ordinarily both would be examined to see if appellant was entitled to a hearing before his transfer. No constitutional issues, however, are before this court as none were raised below. Looking solely to statutory law, a review of such laws in effect at the time of appellant's transfer in 1966 yields nothing which entitled him to a hearing.

We have shown earlier in this opinion that there is nothing in the United States constitution, the Hawaii constitution, or the Hawaii statutory law, which entitles plaintiff to a hearing.

Affirmed.

*Wayne R. Young (David S. Hobler* on the opening brief; Hawaii Correctional Legal Services, Inc., of counsel) for plaintiff-appellant.

*Michael A. Lilly,* Deputy Attorney General, for defendants-appellees.