Delbert Kaahanui **WAKINEKONA**, Plaintiff/Appellant,

v.

Antone **OLIM**, Edith M. Wilhelm, John Smythe, Winton Leong and Edwin Shimoda, Defendants/Appellees.

No. 78–3092.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 14, 1980.

Decided May 26, 1981.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 27, 1981.

Clayton C. Ikei, Honolulu, Hawaii, for plaintiff/appellant.

Michael A. Lilly, Honolulu, Hawaii, for defendants/appellees.

Before GOODWIN, FLETCHER and CANBY, Circuit Judges.

CANBY, Circuit Judge.

In August 1976, Delbert Kaahanui Wakinekona sought to challenge his transfer from Hawaii State Prison to Folsom State Prison in California. Wakinekona sued in the Federal District Court for the District of Hawaii under 42 U.S.C. § 1983, alleging that he was transferred in violation of the due process clause of the fourteenth amendment. The district court dismissed his complaint, holding that the Hawaii statutes and regulations governing prison transfers did not create a substantive liberty interest protected by the due process clause. Wakinekona appealed the resulting judgment. We reverse the decision of the district court, 459 F.Supp. 473.

### I.

Wakinekona was an inmate of the Hawaii State Prison, sentenced to life imprisonment and confined to the maximum control unit. On August 2, 1976, he appeared at a program classification hearing, the stated purpose of which was to determine the reason for the failure of programs within the maximum control unit. As a result of that hearing, Wakinekona was one of two inmates singled out as troublemakers. On August 5, he received notice that the prison program committee would consider at an August 10 hearing whether he should be transferred to another prison in Hawaii or to a mainland prison. The August 10 hearing was conducted by the same persons who presided at the August 2 hearing. The program committee decided that Wakinekona should be transferred to Folsom because of reports that he frequently threatened and intimidated prison guards. Wakinekona was transferred to Folsom. The notice to California prison authorities stated that Wakinekona "has a background of aggravated battery and a history of escape from prison. He is considered to be the most dangerous and assaultive inmate in the Hawaii prison system. . . ."

Wakinekona claimed that his transfer violated the due process clause because the committee which decided to transfer him was biased against him. He alleged that the committee was composed of the same persons who initiated the transfer proceedings, in direct violation of Hawaii prison regulations. The regulations require that an impartial committee make such decisions, and specifically exclude from the committee any persons who were actively involved in initiating the transfer proceedings. Wakinekona argued that because he was denied a hearing before an impartial tribunal, his transfer violated the due process clause. The district court found, however, that the prison transfer regulations did not create a substantive liberty interest protected by the due process clause, and dismissed his complaint.

### II.

In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 446 (1976), the Supreme Court held that prison transfers do not automatically trigger the protections of the due process clause. The gist of those decisions was that the day-to-day functioning of state prisons is the business of the states, not of federal judges. Therefore, the Court held that the due process clause does not

impose a nationwide rule requiring hearings before all prison transfers. *Fano*, 427 U.S. at 229, 96 S.Ct. at 2540. The court also recognized, however, that individual states are free to require prison transfer hearings by statute or by regulation. Hawaii has enacted a set of prison transfer regulations. They clearly condition prison transfers involving a "grievous loss" upon a hearing by an impartial committee established by the prison administrator. Art. IV(2), Supplementary Rules & Regulations of the Corrections Division, Department of Social Services & Housing, State of Hawaii. The regulations also define an interstate transfer as a "grievous loss." The question we face is whether an interstate prison transfer falling within the scope of these regulations invokes the protections of the due process clause.

The result in *Fano* and *Haymes* depended upon two factors. First, the Court rejected the idea that *any* "grievous loss" imposed upon a prisoner implicates due process. The Court stated that not every change in the conditions of the confinement of an inmate is of constitutional magnitude. The Court concluded that the intrastate transfers involved in *Fano* and *Haymes* did not implicate due process because "confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Fano*, 427 U.S. at 225, 96 S.Ct. at 2538. Second, the Court found that the state laws and regulations governing intrastate prison transfers did not create a substantive liberty interest. The Court stated that a substantive liberty interest might be created by the state if there were "some right or justifiable expectation rooted in state law that [the inmate] will not be transferred except for misbehavior or upon the occurrence of other specified events." *Haymes*, 427 U.S. at 242, 96 S.Ct. at 2547.

The Court could find no such right or expectation in the statutory schemes of Massachusetts or New York.

The Court expanded upon its analysis of prison transfers in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which dealt with the transfer of an inmate from prison to a mental hospital. The Court held that such a transfer triggered the application of the due process clause for two independent reasons: (1) it involved the imposition of qualitatively different conditions beyond the range of those justified by the conviction and sentence; and (2) state law gave rise to a liberty interest by creating an objective expectation that a prisoner would not be transferred to a mental hospital unless he suffered from a mental disease or defect that could not be adequately treated in prison.

We need not address the question whether transfer of a prisoner from Hawaii to California involves such qualitatively different conditions that it exceeds the range of confinement justified by his sentence,[1] because we conclude that the Hawaii prison regulations created a liberty interest subject to due process protection.

### III.

In *Fano* and *Haymes*, the Supreme Court found that the state laws governing prison transfers did not create a substantive liberty interest. "Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct." *Fano*, 427 U.S. at 226, 96 S.Ct. at 2539. Under New York law, a prisoner "had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct."

---

1. This court has held that an inmate's transfer from Hawaii State Prison to a state prison in California does not raise any constitutional issues. *Hillen v. Director of Department of Social Services*, 455 F.2d 510, 511 (9th Cir. 1972); see also *Fajeriak v. McGinnis*, 493 F.2d 468 (9th Cir. 1974) (involving transfers from Alaska to other states). These cases preceded *Fano*,

*Meachum* and *Vitek*, however. Interstate transfers were also held not to implicate due process in *Sisbarro v. Warden*, 592 F.2d 1, 3 (1st Cir. 1979) and *Cofone v. Manson*, 594 F.2d 934, 937 n.4 (2d Cir. 1979). These cases were decided after *Fano* and *Meachum* but before *Vitek*.

*Haymes,* 427 U.S. at 243, 96 S.Ct. at 2547. The Court therefore concluded that

> no legal interest or right of these respondents under [state] law would have been violated by their transfer whether or not their misconduct had been proved in accordance with procedures that might be required by the Due Process Clause in other circumstances.

*Fano,* 427 U.S. at 228, 96 S.Ct. at 2540.[2]

The Hawaii prison transfer regulations differ substantially from the statutory schemes addressed by the Supreme Court in *Fano* and *Haymes.* The regulations require that an elaborate procedure will be followed whenever a prison transfer involves a "grievous loss" to the prisoner. Other courts have recognized that the existence of certain procedures may create an expectation protected by the due process clause. *Lokey v. Richardson,* 600 F.2d 1265, 1266 (9th Cir. 1979); *Lamb v. Hutto,* 467 F.Supp. 562, 566 (E.D.Va.1979); *see Sherman v. Yakahi,* 549 F.2d 1287, 1292 (9th Cir. 1977). We believe that the regulations in this case create a justifiable expectation that a prison transfer involving a "grievous loss" will not be carried out unless certain procedures are followed.

The First, Second, and Sixth Circuits have rejected claims that procedures mandated by particular prison transfer regulations create a liberty interest protected by the due process clause. *Lombardo v. Meachum,* 548 F.2d 13, 15 (1st Cir. 1977); *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir. 1979); *Bills v. Henderson,* 631 F.2d 1287, 1298–99 (6th Cir. 1980). To the extent that these cases may be read as holding that no procedural requirements can create a substantive liberty interest, unless the events which may cause a transfer are specified in those requirements, we must disagree.[3] The real issue is whether the transfer regulations create an entitlement to procedural protections. *See Greenholtz v. Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979).

■ The Hawaii regulations clearly guarantee prisoners specified procedural protections before any transfer involving a "grievous loss," and they define an interstate transfer as a "grievous loss." The regulations require that such transfers be considered by an impartial committee. The prisoner subject to transfer is entitled to prior notice of the hearing at which the committee will consider his transfer. The notice must state "what the Committee will consider at the hearing," and "any recent specific facts which may weigh significantly in the classification process." The prisoner has the right to examine all relevant, nonconfidential material related to his case, a right to confront and cross-examine witnesses, a right to retain counsel and a right to respond to the evidence presented to the committee and to offer evidence on his own behalf. The regulations require that the committee "render a recommendation based only upon evidence presented at the hearing to which the individual had an opportunity to respond or any evidence which may subsequently come to light after the formal hearing." These regulations are not without substantive content. Their clear import is that a transfer will not be carried out absent a hearing directed to proof of the facts alleged in the notice received beforehand by the prisoner. In our view, these regulations create a justifiable expectation

---

**2.** New York required no hearing before prison transfers. *Haymes,* 427 U.S. at 243, 96 S.Ct. at 2547. Massachusetts required no hearing by statute, and it is not clear whether that state required transfer hearings by regulation. *Fano,* 427 U.S. at 226–27, 96 S.Ct. at 2539, 2540. Fano did receive a hearing before his transfer. *Fano v. Meachum,* 520 F.2d 374, 376–77 (1st Cir. 1975), *rev'd,* 427 U.S. 215, 96 S.Ct. 2543, 49 L.Ed.2d 446 (1976). The First Circuit opinion in *Fano* mentions only a regulation requiring disciplinary hearings at Walpole State Prison.

*Id.* at 379–80. Fano, however, was confined at Norfolk State Prison, and that regulation would not apply to his transfer, even if it could be considered to be disciplinary.

**3.** In *Lombardo,* the First Circuit interpreted the Massachusetts statutory scheme as not creating a substantive liberty interest protected by the due process clause. The court conceded, however, that a Massachusetts court might come to the opposite conclusion. 548 F.2d at 15 n.3.

that a prisoner will not be transferred absent the specified procedures. They consequently give rise to a constitutionally protected liberty interest.

Our conclusion is reinforced by the fact that the regulations are clearly designed to protect a substantial interest of prisoners. The regulations limit the discretion of prison officials to transfer prisoners whenever a transfer involves a "grievous loss." Nor does our conclusion change because the regulations provide that the decision of the committee is merely advisory to the prison administrator, who can "[a]ffirm or reverse, in whole or in part, the [committee's] recommendation." The state argues that the quoted clause gives the prison administrator unfettered freedom to transfer inmates so that they are in fact transferable at will within the meaning of *Fano* and *Haymes.* This argument grossly undervalues the procedural conditions which the state has imposed upon the actions of the prison administrator. The regulations certainly do not contemplate a transfer at the will of the prison administrator. He may act only after an impartial committee, from which he is excluded, has made a recommendation based upon facts specified in the notice of transfer hearing and proved at that hearing. The whole purpose of such procedural requirements is to protect against arbitrary or uninformed action by the prison administrator. *See Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). That goal cannot be reduced to constitutional insignificance.

We do not mean to suggest that every minor violation of prison transfer regulations will violate due process. First, it must be determined in a particular case whether the transfer regulations create an entitlement to specified procedures. Second, a deviation from the transfer regulations will assume constitutional proportions only when it affects the fairness of the process established by the regulations.[4] *Cf. Winnick v. Manning,* 460 F.2d 545, 550 (2d Cir. 1972). Wakinekona claims that prison officials deprived him of the independent decisionmaker guaranteed by the regulations because the committee which recommended his transfer also initiated the transfer proceedings. An impartial tribunal is one of the mainstays of procedural fairness. *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972). We therefore agree with Wakinekona that in alleging that he was deprived of the independent decisionmaker required by prison regulations, he has stated a claim under 42 U.S.C. § 1983. The district court erred in dismissing his claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

REVERSED AND REMANDED.

GOODWIN, Circuit Judge, dissenting.

The issue is not whether Hawaii's prison authorities should transfer state prisoners without certain formalities,[1] but whether the federal constitution compels the state officers to follow to the letter those local regulations that provide inmates with an "impartial program committee" hearing if a change in prison classification results "in a grievous loss." Because I can find no federal constitutionally-protected interest in having the state follow its own rules in this case, I would affirm the district court's dismissal of this prisoner's § 1983 challenge.

---

**4.** We therefore disagree with the suggestion of the dissent that our ruling imposes a constitutional requirement that state officers follow local regulations "to the letter." *Infra,* p. 712. We simply hold that the particular detailed regulations in this case create a liberty interest, and that deprivation of that interest by a biased decision-maker violates the Fourteenth Amendment. *See* L. Tribe, American Constitutional Law 555 (1978). We have no occasion to rule on what other regulations may create a liberty interest or what other procedural deviations may violate due process. It goes without saying that it would be neither sound law nor desirable policy to constitutionalize every state prison regulation.

**1.** Redress for the alleged violation of prison rules may be available in state court, a possibility recognized by both the state and federal trial courts.

*Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), reasoned that it is the nature, rather than the weight, of the individual interest at stake that involves due process. Thus *Meachum* held that the federal constitution does not apply to transfers of inmates "absent some right or justifiable expectation rooted in state law that [the inmate] will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 446 (1976) (quoting *Meachum*)[2]. For appellant to succeed here, therefore, he ought to demonstrate the existence of a right rooted in state law that limits the prison administrator's discretion to transfer him to a California penitentiary.

No Hawaii statute or prison regulation imposes substantive limitations on the power of Hawaii's prison authorities to transfer a state prisoner to another prison. Wakinekona had argued that the prison regulations setting out specific procedures to precede interstate transfers provide the state law basis for a protected liberty interest. The district court held otherwise and I agree.

According to prison rules, a pre-transfer hearing must be held before an "impartial program committee" if a change in the prisoner's classification will cause the prisoner a "grievous loss." Art. IV, Supplementary Rules and Regulations of the Corrections Division, Department of Social Services & Housing. Because the hearing scheme requires several elements frequently found in "due process" hearings, appellant argues that the existence of the procedural scheme itself is enough to create a liberty interest in having each step of the procedure followed, even though the same correctional regulations give the administrator the power to disregard the judgment of the program committee, and Haw.Rev. Stat. 353–18[3] specifically empowers without limitation the Director of Social Services to transfer a state prisoner to a federal prison. Appellant cites no decision in support of his argument.[4]

The state's position, on the other hand, has ample support, beginning with *Meachum* itself. The prison regulations in effect when Fano was transferred "entitled" inmates to some kind of pre-transfer hearing. *Fano v. Meachum*, 520 F.2d 374, 379–80 (1st Cir. 1975), *reversed*, 427 U.S. 215, 96 S.Ct. 2543, 49 L.Ed.2d 446 (1976). Yet the Supreme Court refused to find on the record before it that state law created the claimed liberty interest. Recognition of the *Meachum* rationale led the first circuit subsequently to refuse to base a protected liberty interest on state mandated pre-transfer procedural safeguards. *Lombardo v. Meachum*, 548 F.2d 13, 15–16 (1st Cir. 1977). *See also Four Certain Unnamed Inmates of*

**2.** *Meachum* and *Montanye* each involved intrastate prison transfers. But the first circuit's reasoning that their principles apply equally to interstate transfers is persuasive. *See Sisbarro v. Warden, Mass. State Penitentiary*, 592 F.2d 1 (1st Cir.), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). Although the burden to inmates will often be greater in interstate transfers, causing them more of a grievous loss, burden is no longer the determining factor for the purposes of ascertaining the procedural due process rights of transferred inmates. *Id.* at 2–3. Therefore, the distinction between interstate and intrastate transfers is irrelevant. *Id.; see also, Cofone v. Manson*, 594 F.2d 934 (2d Cir. 1979) (applying *Meachum* to a prison transfer across state lines).

**3.** § 353–18 Transfer of prisoner to federal institution.

"The director of social services shall, with the approval of the governor, effect the trans-fer of a state prisoner to any federal correctional institution for imprisonment, subsistence, care, and proper employment of such prisoner."

**4.** Moreover, the Hawaii Supreme Court found in *Tai v. Chang*, 58 Haw. 386, 570 P.2d 563 (1977), that the Hawaii Administrative Procedure Act did not entitle an inmate to a hearing prior to an interstate transfer of the prisoner to a federal penitentiary conducted under Haw. Rev.Stat. 353–18. The transfer at issue in that case occurred before the adoption of Regulation IV. But the state supreme court decided *Tai* after the promulgation of Regulation IV, and in doing so did not indicate that the regulation's existence changed matters. It would seem presumptuous for federal judges to tell the Hawaii court to hold hereafter that Regulation IV limits the director's discretion under § 353–18.

*Mass. etc. v. Hall,* 550 F.2d 1291 (1st Cir. 1977); *Daigle v. Hall,* 564 F.2d 884 (1st Cir. 1977). *Peterson v. Davis,* 421 F.Supp. 1220 (E.D.Va.1976), *aff'd without opinion,* 562 F.2d 48 (4th Cir. 1977), likewise held that a state's practice of affording pre-transfer hearings does not turn such hearings into a constitutional requirement.

Even where statutes require out-of-state transfers to be accompanied by "all procedural safe-guards . . . to insure due process of law," or where statutes authorize certain transfers only when "in . . . [the Commissioner's] opinion, the inmate needs particular treatment or special facilities available at . . . [the transferee institution], or it is in the best interest of the state," no federal liberty interest has been found. *Cofone v. Mason,* 594 F.2d 934, 937–38 (2d Cir. 1979). The second circuit there concluded that the grant of transfer authority was too broad to support a justifiable expectation that an inmate would not be transferred without some specified event or findings.

"Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements. . . . Since § 18–78a(b) at most directs Connecticut officials to follow certain procedures in deciding whether to transfer Cofone, and does not substantively restrict their authority to order the transfer, it cannot be the source of any right or justifiable expectation on

Cofone's part that he would not be transferred absent misbehavior." 594 F.2d at 938–39.

Because I agree with the reasoning of the first and second circuits,[5] I must respectfully dissent from the majority's unnecessary creation of a conflict among the circuits on this point.

On Petition for Rehearing and Suggestion for Rehearing En Banc

CANBY, Circuit Judge.

The State in its petition for rehearing directs our attention to *Lono v. Ariyoshi,* 621 P.2d 976 (Hawaii 1981). In that case the Supreme Court of Hawaii dealt with the same transfer regulations involved in the present case. It held that no fourteenth amendment liberty interest was created by the regulations because the prison administrator had unlimited discretion to order a transfer or not. 621 P.2d at 980–81. With all due respect to the Hawaii Court's conclusion, we do not find it controlling here.

It is of course the sole prerogative of the highest state court to determine the meaning of a state statute or regulation. Once that meaning is determined, however, it is a federal question whether the interest created by the state statute or regulation is to be accorded protection under the fourteenth amendment. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978).

---

5. The cases cited by the majority are not controlling. They stand for the general proposition that federal and state agencies must abide by their own regulations. *See Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959). Even if this is a due process requirement, as the majority suggests, the question before this court is not whether the failure to follow the regulations violated due process, but whether the regulations created a liberty interest that could not be taken away without a hearing. Wakinekona raised only the latter point in his § 1983 complaint. *Cofone v. Manson,* 594 F.2d 934, 937 n.3 (2d Cir. 1979), held that the state regulations providing for a hearing did not give rise to a liberty

interest so as to require a hearing as a matter of federal due process. The court noted that Cofone had dropped the argument that his transfer deprived him of due process because it violated Connecticut's own regulations. *Lombardo v. Meachum,* 548 F.2d 13, 16 (1st Cir. 1977), also found that the regulations regarding hearings did not give rise to a liberty interest. The first circuit did not discuss *Accardi*-due process; presumably because it found that the district court did not abuse its discretion in concluding that the prison board fully complied with its regulations. I think the majority has confused these two due process points and has incorrectly concluded that the regulations created a liberty interest, thus requiring a particular type of hearing.

■ We do not read *Lono v. Ariyoshi* as having interpreted Regulation IV differently from this court. While the Hawaii Court points out, as did this court, that the prison administrator ultimately has complete discretion whether or not to transfer, the *Lono* opinion does not suggest any weakening of the preconditions required by the Regulation for the exercise of the prison administrator's discretion. We have held that those preconditions establish a liberty interest within the meaning of the fourteenth amendment, and we adhere to that holding. On that federal question, we respectfully disagree with the Supreme Court of Hawaii.

Nor do we think that the result in this case is affected by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Parratt* dealt with the negligent loss of a $23 hobby kit by prison officials, and the Court held that the prisoner was not deprived of his property without due process where there was a state tort claims statute that could afford full redress. That type of post-deprivation hearing was sufficient, in the Court's view, to satisfy the fourteenth amendment.

We do not believe that *Parratt* applies to the present case. The majority opinion in *Parratt* concentrates on the problems inherent in turning federal courts into forums for dealing with common law torts that are the regular business of state courts. 101 S.Ct. at 1917. The present case, dealing with a liberty interest, is of a wholly different nature. Indeed, Justice Blackmun's concurring opinion (joined by Justice White) in *Parratt* suggests that the *Parratt* ruling is confined to deprivation of property. 101 S.Ct. at 1918. In short *Parratt* is simply a different case from the present one.

■ It is true that there is general language in the majority opinion in *Parratt* suggesting that where a deprivation occurs because a state *fails* to follow its procedure rather than *because* it follows its procedure, and there is a state court remedy, then the state has provided all the process that is due. 101 S.Ct. at 1917. But this statement must be read in the context in which it was made, that of a tortious deprivation of property for which the state provides a tort remedy. A broader reading that would apply to the present case would remit all § 1983 cases to state courts whenever the conduct complained of violated state law as well as the federal Constitution. The result would be to read into § 1983 a requirement of exhaustion that has consistently been rejected by the federal courts.[1] *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961); *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); *Canton v. Spokane School District*, 498 F.2d 840, 844 (9th Cir. 1974). For this reason, also, we conclude that *Parratt* does not control the present case.

The petition for rehearing is denied. Judge Goodwin dissents and would grant the rehearing. The suggestion for rehearing en banc having failed to receive the affirmative vote of a majority of the active judges, rehearing en banc is denied.

---

1. It is also clear that *Parratt* cannot be read as holding that a state court remedy for a violation of the fourteenth amendment itself provides all the process that is due. The problems with such a circular proposition are insurmountable. Section 1983 actions may be brought in state court. *Martinez v. California*, 444 U.S. 277, 283–84 n.7, 100 S.Ct. 553, 558 n.7, 62 L.Ed.2d 481 (1980); *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1, 100 S.Ct. 2502, 2503 n.1, 65 L.Ed.2d 555 (1980). State courts are obligated to enforce applicable federal law. U.S.Const. art. VI, cl. 2. By entertaining § 1983 actions, a state court consequently provides a remedy for state deprivation of any federal right. To say that such a remedy provides all the process that is due from a state would be to deprive the federal courts of primary enforcement of federal rights. *Parratt* of course evinces no such intention.