Teresa Zavala de **PANTOJA, et al., Plaintiffs,**

v.

**CITY OF GONZALES, et al., Defendants.**

**No. C–81–4465–WWS.**

United States District Court, N. D. California.

May 6, 1982.

Alfred Lombardo, Rucka, O'Boyle & Lombardo, Marjorie F. Cohn, Salinas, Cal., for plaintiffs.

Stephen A. Lankes, Holbrook & Lankes, Salinas, Cal., for defendants.

MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

On the morning of August 21, 1981, defendants McEwan and Raymond, police officers employed by defendant City of Gonzales, found Antonio Pantoja lying on the street, apparently drunk and asleep. Not having roused him, they took him into custody as a public drunk unable to care for his own safety. (Cal.Penal Code § 647(f)). He was placed in a holding cell to sober up. Eight hours later he was found dead. An autopsy report attributed death to a blow to the head, possibly suffered during an assault before he was taken into custody.

Pantoja's heirs have brought this action under 42 U.S.C. § 1983 [1] and certain other provisions of law,[2] alleging that defendants' treatment of their decedent denied him due process of law. Specifically, they contend that the police officers denied Pantoja protection and medical care, and that the city and its supervisory personnel failed to train the officers adequately.

Defendants have moved to dismiss. Their motion raises the question whether under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and subsequent decisions of the Supreme Court and the Ninth Circuit, the availability of a state law tort remedy provides plaintiffs with the process due them, thereby negating a constitutional claim.

The record before the Court establishes sufficiently that defendants acted under color of state law and that liability of the city and its supervisory personnel is sought to be founded on practices and policies known to them. *See Monell v. Department*

---

1. Under 42 U.S.C. § 1988, survival of Pantoja's claim for the benefit of his heirs is governed by state law. *See Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974). Cal.Civ.Code § 956 provides for the survival of an action such as this.

2. It is not necessary to address the claims asserted under the First, Fourth, Fifth and Eighth Amendments and 42 U.S.C. §§ 1981, 1982, 1985 and 1986. The facts alleged do not state a claim under any of those provisions and plaintiffs make no attempt to show otherwise. Those claims must therefore be dismissed. Whether plaintiffs are entitled to relief under 42 U.S.C. § 1988 will be determined following disposition of the § 1983 claim. The pendent state law wrongful death claim may be maintained if the § 1983 claim is viable.

*of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Those practices and policies concern the manner of handling persons taken into custody under the California public drunk law. Since the decision in *Parratt*, moreover, it is clear that Section 1983 liability may be based on negligent conduct.

The question is whether plaintiffs have stated facts from which a due process violation can be found. To answer that question, a careful analysis of *Parratt* and its progeny is required.

In *Parratt*, the Supreme Court held that no due process violation had been alleged where a deprivation of property had been brought about by the unauthorized acts of state agents and the state provided adequate means to redress that deprivation promptly. 451 U.S. at 553, 101 S.Ct. at 1922. The facts, briefly stated, were that plaintiff, an inmate at a state institution, had ordered some hobby materials. When they arrived in the mail, he was not there to receive them. Two employees took them and left them for plaintiff at the hobby center in violation of prison regulations. When the materials later turned out to be lost, plaintiff brought an action under Section 1983, alleging that he had been negligently deprived of his property without due process of law.

The Court based its analysis on the line of cases dealing with the need for a hearing prior to a deprivation of property, principally *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Those cases mandate that some kind of hearing be afforded at some time before a State may deprive a person of his property. In appropriate circumstances, however, due process may be satisfied by a post-deprivation hearing. *Parratt* was held to present such a case because the deprivation was the result of an unauthorized and hence unpredictable departure by state agents from the established lawful state procedures. Thus, in cases of unauthorized conduct, as opposed

to cases where the state's established procedure itself effects a deprivation, the state affords due process by providing an adequate post-deprivation remedy.

Further light was shed on *Parratt* by the Court's recent opinion in *Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In that case, the question was whether plaintiff had been deprived of a state-created claim for relief based on job discrimination, where he had filed a timely claim with the state commission but the commission had failed to convene the statutorily mandated employer-employee conference within the 120-day period specified by the statute. The Illinois Supreme Court held the failure of the Commission to act within the 120-day period to be jurisdictional, foreclosing the employee's remedies against his employer.

Responding to the employer's argument that, under *Parratt*, a damage action against the agency provided the employee with due process, the Court said:

This argument misses *Parratt's* point. In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of . . . property as a result of a random and unauthorized act by a state employee . . . not a result of some established state procedure." 451 U.S. at 541 [101 S.Ct. at 1915]. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. See *id.*, at 545 [101 S.Ct. at 1918] (second concurring opinion [Blackmun, J.]). Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.

102 S.Ct. at 1158.[3]

The claim in this case is based, not on a "random and unauthorized act" but rather

**3.** On the *Parratt* issue, Justice Blackmun wrote      for a unanimous Court. Two separate opinions

on the "established state procedure" for the handling of persons taken into custody under the state's public drunk law.[4] *Parratt*, therefore, is inapplicable.

Nothing further would need to be said were it not for two Ninth Circuit decisions interpreting *Parratt*. In the first case, *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345 (9th Cir. 1981), a former Arizona State University football player sued his coach and other state employees under Section 1983 over the loss of his team position and scholarship and over certain incidents of harassment and abuse. Most of the claims were dismissed on the ground that they were barred by res judicata—the plaintiff had already prosecuted an unsuccessful state law action—or that they did not involve constitutionally protected interests. But for purposes of discussion, the court treated the assault and battery claim against the coach (who allegedly struck plaintiff after a bad punt) as one asserting an invasion of a liberty interest. 660 F.2d at 1352. The court addressed the question whether this deprivation was "without due process of law" as follows:

> Obviously the assumed deprivation was not, nor could it have been, accompanied by a predeprivation hearing. That being so, the issue is whether the postdeprivation hearing available to the appellant under the law of the State of Arizona satisfies the due process requirement of the Fourteenth Amendment.

660 F.2d at 1352.

The court decided that the Arizona tort action available to plaintiff (of which he had already, in fact, availed himself) provided the hearing "at a meaningful time and in a meaningful manner" that was the essence of due process. *See Parratt, supra,*

451 U.S. at 540, 101 S.Ct. at 1915. In the absence of any indication that the state right of action and hearing were procedurally deficient, the court concluded that "the alleged deprivation was not without due process of law":

> That the effect of our holding is to relegate appellant to his tort law remedy under Arizona law for Kush's alleged assault and battery should surprise no one. That is the consequence of *Parratt v. Taylor* as applied to this action of Kush.

660 F.2d at 1352.

Two weeks after the *Rutledge* decision, another Ninth Circuit panel considered the effect of *Parratt* on liberty interests in an appeal by a Hawaii state prisoner who had been transferred to a California prison. The state's regulations entitled a prisoner to a hearing before an impartial committee before being transferred out of state. Wakinekona contended that he had been deprived of the independent decisionmaker guaranteed by the regulations because the committee which considered his transfer had also initiated the transfer proceedings. The Ninth Circuit held that the regulation created a liberty interest and that a Section 1983 claim had therefore been stated. *Wakinekona v. Olim*, 664 F.2d 708 (9th Cir. 1981) (as amended on denial of petition for rehearing en banc).

On petition for rehearing the court considered the effect of *Parratt*. Without citing *Rutledge*, it distinguished *Parratt* as dealing with "problems inherent in turning federal courts into forums for dealing with common law torts that are the regular business of the state courts." 664 F.2d at 715. "The present case," the court noted, "dealing with a liberty interest is of a wholly different nature." 664 F.2d at 715.

---

filed in that case related to different issues and do not diminish the force of the Court's pronouncement. The position taken by Justice Blackmun in *Logan* was foreshadowed in his concurring opinion in *Parratt* where he said:

> In the majority of such cases, the failure to provide adequate process prior to inflicting the harm would violate the Due Process Clause. The mere availability of a subsequent tort remedy before tribunals of the same authority that, through its employees,

deliberately inflicted the harm complained of, might well not provide the due process of which the Fourteenth Amendment speaks. (451 U.S. at 546, 101 S.Ct. at 1918)

4. By taking that position in their pleadings and their opposition to the motion to dismiss, plaintiffs are of course bound to it at the trial and the instructions to the jury will be limited accordingly.

The court went on to elaborate on the resulting distinction. Although *Wakinekona*, like *Parratt*, involved random and unauthorized behavior, rather than an attack on the regular state procedure, the court held that it fell outside the *Parratt* rationale. It reasoned that in *Parratt*, the state procedure provided a remedy, albeit post-deprivation, which was adequate to preclude a deprivation of due process. In *Wakinekona*, however, the state provided no such remedy for a violation of the very procedure intended to protect inmate's rights unless a state court civil rights action were to be regarded as such; and to accept an action for violation of the fourteenth amendment as an adequate post-deprivation remedy precluding denial of due process would be circular reasoning. As the court said:

> It is true that there is general language in the majority opinion in *Parratt* suggesting that where a deprivation occurs because a state *fails* to follow its procedure rather than *because* it follows its procedure, and there is a state court remedy, then the state has provided all the process that is due.... But this statement must be read in the context in which it was made, that of a tortious deprivation of property for which the state provides a tort remedy. A broader reading that would apply to the present case would remit all § 1983 cases to state courts whenever the conduct complained of violated state law as well as the federal Constitution. The result would be to read into § 1983 a requirement of exhaustion that has consistently been rejected by the federal courts.... For this reason, also, we conclude that *Parratt* does not control the present case.[5]

664 F.2d at 714 (citations and footnote omitted).

Although the foregoing decisions are not wholly consistent and may produce disparate results in other circumstances, they are reconcilable for purposes of the instant motion.

Under the reasoning of *Parratt*, as illuminated by *Logan*, this case falls squarely within the category of cases attacking an established state procedure (including also the allegedly inadequate training of police officers), as opposed to those attacking random or unauthorized and hence unpredictable acts. Where the deprivation occurs as a result of the established practice, procedure or custom of the state authority, as alleged here, the result is not unpredictable and the state has a constitutional duty to prevent it. A post-deprivation hearing provided by the state in the course of a wrongful death action, which may satisfy due process in cases of random and unpredictable acts, is not adequate here. The motion to dismiss must therefore be denied.

That conclusion, although reached on different grounds, squares with *Rutledge*. The availability of a state law tort action there foreclosed a Section 1983 action, but the conduct complained of was random and unauthorized. Here the deliberate custom and procedure of police authorities is challenged, and the availability of a wrongful death action will not satisfy the state's obligation not to deprive a person of life without due process.

This decision is also not inconsistent with *Wakinekona*, which permitted a Section 1983 action to go forward.[6] *Wakinekona*

---

**5.** It is important to keep in mind that *Parratt* is not an exhaustion case. The issue there was not whether state remedies had to be pursued before a federal court action could be maintained. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (state judicial remedies need not be exhausted before Section 1983 action can be maintained in federal court); *cf. Patsy v. Florida Intern. University*, 634 F.2d 900 (5th Cir.) (en banc), *cert. granted,* —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981) (action remanded to determine whether exhaustion of state administrative remedies should be re-

quired). Rather the issue was whether the availability of certain post-deprivation state remedies was sufficient to render the alleged deprivation one *not* without due process of law. *See Ellis v. Hamilton*, 669 F.2d 510, 515 (7th Cir. 1982) (seizure by county officials of adopted children not a due process violation in view of availability of various post-seizure state remedies).

**6.** For the reasons stated in the opinion, this motion can be disposed of on the basis of the *Parratt-Logan* analysis resting on the distinc-

should, however, be recognized as belonging to a different class of cases, i.e., cases of unauthorized behavior in which the conduct complained of did not fall into categories, such as traditional torts or property seizures, for which the state has provided post-deprivation remedies adequate to meet a due process test.

For the reasons stated, the motion is denied. The parties are directed to appear for a status conference on Friday, July 2, 1982 at 10 a. m.

IT IS SO ORDERED.

tion between unauthorized acts and regular proceedings under state law. The *Wakinekona* court, however, suggests that *Parratt* is limited to property interests.

It is true that *Parratt* itself involved a property interest and the decision relied in part on a line of property seizure cases holding that deferral of the hearing until after seizure may be justified by exigent circumstances. *Cf. North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). The reasoning of those cases, based on the impracticability of a predeprivation hearing, supports the adequacy of a post-deprivation hearing in cases of random and unauthorized official behavior in which, by definition, no predeprivation hearing can be provided.

But the *Parratt* Court also relied on *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), in which it held that corporal punishment in schools without a predeprivation hearing was not a due process violation. Although *Ingraham* was a more egregious case than *Parratt*, involving both an intentional act and a deprivation of liberty, the Court there applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which the *Parratt* Court adopted in its opinion, as follows:

> At some point the benefit of an additional safeguard to the individual affected . . . and to society in terms of increased assurance that the action is just, may be outweighed by the cost. *Mathews v. Eldridge*, 424 U.S. at 348 [96 S.Ct. at 909]. We think that point has been reached in this case. In view of the low incidence of abuse the openness of our schools, *and the commonlaw safeguards that already exist*, the risk of error that may result in violation of a schoolchild's substantive rights can only be regarded as minimal.

451 U.S. at 542–43, 101 S.Ct. at 1916 (emphasis added).

*Parratt*, therefore, strongly suggests that its analysis and reasoning do not exclude a priori cases involving liberty rather than property interests. If the deprivation is the result of a random or unauthorized act, a post-deprivation remedy may satisfy due process depending on whether the nature of the deprivation and the character of the available state remedy make the risk of a substantial deprivation only minimal. *See Ellis v. Hamilton, supra* n.5 (applying *Parratt* to a deprivation of a liberty interest).